IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-120

No. 36A22

Filed 16 December 2022

CEDARBROOK RESIDENTIAL CENTER, INC. and FRED LEONARD

v.

NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF HEALTH SERVICE REGULATION, ADULT CARE LICENSURE SECTION

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 281 N.C. App. 9, 2021-NCCOA-689, affirming an order entered on 6 November 2020 by the North Carolina Industrial Commission denying defendant's motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure. Heard in the Supreme Court on 4 October 2022 in the Historic 1767 Chowan County Courthouse in the Town of Edenton pursuant to N.C.G.S. § 7A-10(a).

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Joseph A. Ponzi and Howard L. Williams, for plaintiff-appellees.*

*Robinson, Bradshaw & Hinson, P.A., by Adam K. Doerr and Demi Lorant Bostian; and Joshua H. Stein, Attorney General, by Amar Majmundar, Special Deputy Attorney General, for defendant-appellant.*

*Disability Rights North Carolina by Lisa Grafstein and Kristine Sullivan, for Disability Rights North Carolina, Friends of Residents in Long Term Care, AARP, and AARP Foundation, amici curiae.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by John E. Harris and James C. Wrenn, Jr., for North Carolina Senior Living Association and North Carolina Assisted Living Association, amici curiae.*

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

ERVIN, Justice.

¶ 1 This case arises from a dispute between plaintiffs Cedarbrook Residential Center, Inc., an adult care home, and its owner, Fred Leonard, on the one hand, and defendant North Carolina Department of Health and Human Services, on the other hand, arising from certain regulatory actions taken by the department in response to deficiencies that the employees of the department's Adult Care Licensure Section had identified during inspections of plaintiffs' facility. After plaintiffs contested the department's actions by initiating a contested case before the Office of Administrative Hearings, the parties reached a settlement pursuant to which the department agreed to withdraw its allegations in exchange for plaintiffs' agreement to take certain remedial steps that were intended to address the alleged deficiencies. Subsequently, plaintiffs filed a claim with the Industrial Commission pursuant to the North Carolina State Tort Claims Act in which they alleged that departmental employees had been negligent in the course of inspecting and exercising regulatory authority over plaintiffs' facility and sought to recover damages arising from increased operating expenses, decreased revenue, and lost profits from a planned sale of the facility that, in plaintiffs' view, had been proximately caused by the department's negligence. Although the department sought dismissal of plaintiffs' claims on the grounds that they were barred by the doctrine of sovereign immunity, that the claims

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

that plaintiffs sought to assert against the department were not cognizable under the State Tort Claims Act, that plaintiffs had failed to plead a valid negligence claim against the department, and that plaintiffs' claims were foreclosed by the public duty doctrine, the Commission denied the department's dismissal motion, a decision that a divided panel of the Court of Appeals affirmed. *Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 281 N.C. App. 9, 2021-NCCOA-689. The department noted an appeal to this Court based upon a dissenting opinion at the Court of Appeals. After careful consideration of the parties' arguments in light of the record and the applicable law, we reverse the decision of the Court of Appeals and remand this case to that court for further remand to the Commission for additional proceedings not inconsistent with this opinion.

## I. Factual Background

### A. Substantive Facts

Cedarbrook is an adult care home located in Nebo that is owned and operated by Mr. Leonard. Cedarbrook "provid[es] a place of residence for disabled adults, including those with historic mental illness who are primarily stable in their recovery, though occasionally volatile," and who "are a challenging population with a distinct culture, for whom few housing options exist in North Carolina." As an adult

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

care home,[1] Cedarbrook is subject to oversight by the department's Adult Care Licensure Section pursuant to Chapter 131D of the North Carolina General Statutes, N.C.G.S. § 131D-1 *et seq.* (2021), which provides a comprehensive regulatory framework governing adult care homes that is intended to "ensure that adult care homes provide services that assist the residents in such a way as to assure quality of life and maximum flexibility in meeting individual needs and preserving individual autonomy," N.C.G.S. § 131D-4.1.

The General Assembly has delegated numerous regulatory powers to the department, including the authority to license and inspect adult care homes, N.C.G.S. § 131D-2.4, and to adopt rules relating to the monitoring and supervision of residents, the quality of care provided to residents, and the staffing levels provided at such facilities, N.C.G.S. § 131D-4.3. In addition, the department is required to assess administrative penalties against any adult care home that is found to be in violation of applicable state and federal laws and regulations, including any provision of the "Adult Care Home Residents' Bill of Rights," N.C.G.S. § 131D-34, codified as Article 3 of Chapter 131D, N.C.G.S. § 131D-19 *et seq.*, which embodies the General

---

[1] An adult care home is defined as "[a]n assisted living residence in which the housing management provides 24-hour scheduled and unscheduled personal care services to two or more residents, either directly or for scheduled needs, through formal written agreement with licensed home care or hospice agencies," including residents "with cognitive impairments whose decisions, if made independently, may jeopardize the safety or well-being of themselves or others and therefore require supervision." N.C.G.S. § 131D-2.1(3).

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

Assembly's desire "to promote the interests and well-being of residents in adult care homes and assisted living residences" so that "every resident's civil and religious liberties, including the right to independent personal decisions and knowledge of available choices, shall not be infringed" and so that "the facility shall encourage and assist the resident in the fullest possible exercise of those rights," N.C.G.S. § 131D-19. In support of this policy, the relevant statutory provisions set out an extensive "declaration of rights" that are available to residents of adult care homes, N.C.G.S. § 131D-21, and charges the department and local social services agencies with the responsibility for their enforcement, N.C.G.S. §131D-26.

¶ 4 In November 2015, the department conducted an inspection of Cedarbrook, during which it identified numerous concerns about the manner in which the facility was being operated, and reported those deficiencies to Cedarbrook in a "Statement of Deficiencies." As a result of these alleged deficiencies, the department suspended new admissions at Cedarbrook on 19 November 2015 and issued a notice of its intent to revoke Cedarbrook's license on 17 December 2015. After a follow-up inspection conducted in March 2016, the department issued another Statement of Deficiencies in which it concluded that Cedarbrook had "failed to submit acceptable plans of protection [for its residents] in compliance with [N.C.G.S §] 131D-34(a)" despite the department's repeated requests that it do so. In these two Statements of Deficiencies,

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

which totaled more than 400 pages, the department described the problems that it

had identified at Cedarbrook, including, but not limited to,

i. Supervision and staffing issues, including a resident who went missing and was later found near I-40, around five miles away from Cedarbrook;

ii. Reports of residents performing sex acts for money or sodas from the Cedarbrook commissary;

iii. Admitting and failing to discharge residents exhibiting dangerous and aggressive behavior, including physical aggression and arson;

iv. Smoking inside the facility;

v. Hoarding behaviors creating a safety hazard;

vi. Failing to protect residents' privacy when administering medication; and

vii. Issues with maintenance of medical equipment, such as walkers and wheelchairs.

As a result of these two inspections, the department concluded that Cedarbrook had

committed five Type A1 violations, one Type A2 violation, and eight Type B

violations.[2]

---

[2] A "Type A1 Violation" is "a violation by a facility of the regulations, standards, and requirements set forth in [N.C.G.S. §] 131D-21 or applicable State or federal laws and regulations governing the licensure or certification of a facility which results in death or serious physical harm, abuse, neglect, or exploitation." N.C.G.S. § 131D-34(a)(1). A "Type A2 Violation" involves a violation that "results in substantial risk that death or serious physical harm, abuse, neglect, or exploitation will occur." N.C.G.S. § 131D-34(a)(1a). A "Type B Violation" is a violation that "is detrimental to the health, safety, or welfare of any resident, but which does not result in substantial risk that death or serious physical harm, abuse, neglect, or exploitation will occur." N.C.G.S. § 131D-34(a)(2). The applicable statute

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

¶ 5    Based upon these findings, on 18 March 2016, the department issued a "Directed Plan of Protection," which it believed to be necessary "to ensure the health, safety, and welfare of the residents." The Directed Plan of Protection required Cedarbrook to address the problems that had been identified in the Statements of Deficiencies by, among other things, increasing on-site staffing levels, assessing all residents who had been diagnosed with a mental illness or an intellectual developmental disability for the purpose of ensuring that they received appropriate care and supervision, providing additional staff training, and reviewing and, to the extent necessary, revising Cedarbrook's policies concerning the use and suspected use of illicit drugs and alcohol by Cedarbrook residents. On 16 May 2016, the department withdrew its notice of intent to revoke the facility's operating license and issued a provisional license based upon its determination, in accordance with N.C.G.S. § 131D-2.7, that there was a "reasonable probability" that Cedarbrook could remedy the deficiencies that the department had identified.

¶ 6    Cedarbrook disputed the department's regulatory findings and filed a petition with the Office of Administrative Hearings in which it formally challenged the validity of those findings and the lawfulness of the regulatory actions that the department had taken. On 6 July 2016, the Office of Administrative Hearings stayed

---

authorizes the department to impose substantial financial penalties for each identified violation. *See generally* N.C.G.S. § 131D-34.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

the department's decision to suspend further admissions at Cedarbrook, a sanction that the department formally lifted on 12 August 2016. Prior to the holding of a formal contested case hearing before an administrative law judge, the parties reached a settlement pursuant to which the department agreed to withdraw all the violations that it had identified in the Statements of Deficiencies in return for Cedarbrook's agreement to take certain remedial actions.[3]

## B. Procedural History

On 25 October 2018, plaintiffs filed an affidavit and verified claim for damages with the Commission pursuant to the State Tort Claims Act, N.C.G.S. § 143-291 *et seq.*, in which they alleged that the department had abused its authority in investigating and taking regulatory actions against Cedarbrook and that the department had been "negligent," with "its negligence [having] caused extensive harm to Cedarbrook, its owner [Mr. Leonard], and, although not claimants here, its residents."[4] More specifically, plaintiffs alleged that the department "owed

---

[3] Although plaintiffs highlight the department's withdrawal of the alleged violations in their complaint and their briefing before this Court as evidence that the department's regulatory actions had been unjustified, plaintiffs' counsel admitted during oral argument that the withdrawal of the alleged violations had stemmed from the fact that the parties had reached a settlement of their differences.

[4] Most of plaintiffs' affidavit and a significant portion of their brief to this Court is devoted to a detailed discussion of the specific violations identified by the department and an explanation of the basis for plaintiffs' belief those alleged violations lacked any legal or factual justification. Given that the truthfulness of these specific factual contentions is not germane to the proper resolution of the legal questions that are currently before us in this case, we will not discuss the validity of the department's substantive allegations against Cedarbrook in any detail in this opinion.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

[plaintiffs] a duty of reasonable care in the exercise of its authority to investigate the facility and take licensure action against [Cedarbrook]" and that the department had breached that duty by "(1) conducting the [inspections] of Cedarbrook; (2) writing and publishing the Statements of Deficiencies; (3) issuing the Directed Plan of Protection against Cedarbrook and leaving it in place for nearly five months; and (4) issuing the [suspension of admissions], and leaving it in place for nearly eight months." Plaintiffs further alleged that, "[a]s a direct and proximate result of [the department's] negligence," plaintiffs had suffered damages in the form of lost revenue stemming from a decreased facility population, an increase in operating expenses stemming from the Directed Plan of Protection, and the cancellation of an agreement to sell Cedarbrook into which Mr. Leonard had entered prior to the suspension of admissions.

¶ 8        On 8 January 2019, the department filed a motion seeking to have plaintiffs' claim dismissed for lack of subject matter jurisdiction pursuant to N.C.G.S. § 1A-1, Rule 12(b)(1); for lack of personal jurisdiction pursuant to N.C.G.S. § 1A-1, Rule 12(b)(2); and for failure to state a claim upon which relief could be granted pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). N.C.G.S. § 1A-1, Rule 12. According to the department, plaintiffs' claims were barred by the doctrine of sovereign immunity, plaintiffs' claims were not cognizable under the State Tort Claims Act, plaintiffs had failed to plead a valid negligence claim against the department, and plaintiffs' claims

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

were barred by the public duty doctrine. On 13 March 2019, Deputy Commissioner James C. Gillen entered an order denying the department's dismissal motion. After the department sought an immediate appeal from the Deputy Commissioner's order to the Commission, the Commission authorized the department to take such an appeal on the grounds that its invocation of the doctrine of sovereign immunity implicated a substantial right, citing *Viking Utils. Corp. v. Onslow Water & Sewer Auth.*, 232 N.C. App. 684, 686 (2010), and *Green v. Kearney*, 203 N.C. App. 260, 266 (2010).

¶ 9        Following a hearing held on 10 September 2019, the Commission entered an order on 6 November 2020 in which it affirmed the Deputy Commissioner's decision to deny the department's dismissal motion. First, the Commission rejected the department's subject matter and personal jurisdiction arguments on the grounds that the State Tort Claims Act worked a partial waiver of the State's sovereign immunity and that plaintiffs had complied with the statutory requirements for asserting a claim against the department pursuant to the State Tort Claims Act by filing an affidavit with the Commission and identifying multiple departmental employees who had allegedly acted in a negligent manner. Second, the Commission concluded that the department was not entitled to rely upon the public duty doctrine in responding to plaintiffs' claims on the grounds that the General Assembly had amended the State Tort Claims Act in 2008 to limit the availability of the public duty doctrine for the

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

purposes of the State Tort Claims Act to situations involving injuries resulting from an allegedly negligent failure "to protect the claimant from the action of others or from an act of God by a law enforcement officer" or from the actions "of an officer, employee, involuntary servant[,] or agent of the State to perform a health or safety inspection required by statute," citing N.C.G.S. § 143-299.1A(a). Given that plaintiffs' claims "concern the alleged[ly] negligent performance of the inspection (survey) process conducted by [the department]," which is not one of the exceptions listed in the statute, the Commission determined that "the public duty doctrine d[id] not apply" in this case. In addition, the Commission concluded that plaintiffs had alleged sufficient facts to support the assertion of a viable negligence claim against the department on the grounds that

> [t]aking the allegations as true, the Commission finds and concludes [that] there is sufficient showing that [the department] breached its "duty of reasonable care in the exercise of its authority to investigate the facility and take licensure actions" and that [the department] negligently issued statements of deficiencies, causing the suspension of admissions and reducing the value of Cedarbrook and causing loss of funds through the collapse of a prospective sale and prospective income. Thus, [plaintiffs'] argument is not that it is pursuing claims on behalf of the residents. Rather, [plaintiffs'] standing argument is that it was harmed by the loss of the prospective sale and income caused by [the department's] allegedly negligent issuance of [a] statement of deficiencies.

Finally, the Commission rejected the department's argument that plaintiffs were not entitled to relief under the State Tort Claim Act on the grounds that the department's

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

agents had acted intentionally, rather than negligently, reasoning that "[p]laintiffs did not allege that [the department had] intended to cause [p]laintiffs harm in undertaking the various licensure actions against them" and that they had, instead, "alleged that [the department's] conduct was negligent in the inspection and surveying process," so that "[p]laintiffs' claims under the Tort Claims Act are not barred by the intentional nature of [the department's] actions," *citing Crump v. N.C. Dept. of Env't & Nat. Res.*, 216 N.C. App. 39, 40 (2011). The department noted an appeal to the Court of Appeals from the Commission's order.

## C. Court of Appeals Decision

¶ 10    In seeking relief from the Commission's order before the Court of Appeals, the department argued that the Commission had erred by failing to dismiss plaintiffs' claims and "effectively recognizing a claim for 'negligent regulation' that permits a regulated entity to sue its state regulator under the [State] Tort Claims Act[.]" Among other things, the department contended that (1) the limited waiver of sovereign immunity worked by the State Tort Claims Act did not allow the assertion of plaintiffs' claims against the department since the State Tort Claims Act only permits a party to sue the State "where the State of North Carolina, *if a private person*, would be liable" and "[p]rivate persons cannot be held liable for regulatory actions;" (2) the Commission's interpretation of the State Tort Claims Act authorized an "end-run" around the process that the General Assembly created for the purpose

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

of allowing aggrieved parties to challenge allegedly unlawful regulatory actions using the North Carolina Administrative Procedure Act; (3) the public duty doctrine operated to bar plaintiffs' claims; and (4), even if the State Tort Claims Act did apply to claims like the one that plaintiffs sought to assert, they had failed to plead a valid negligence claim. (emphasis in original). In addition, the department argued that plaintiffs' claims should not be permitted to proceed as a matter of public policy given that allowing a regulated entity to assert a claim sounding in tort against the entity responsible for regulating its activities "could dissuade regulators from performing their statutorily mandated dut[ies]" in an effective manner.

¶ 11        A divided panel of the Court of Appeals filed an opinion affirming the Commission's order, with a majority of the Court of Appeals having agreed that plaintiffs should be allowed to pursue a claim against the department pursuant to the State Tort Claims Act for acting negligently in the course of performing its regulatory duties. *Cedarbrook*, ¶ 16; *id.*, ¶ 35 (Dietz, J., concurring). According to Judge Arrowood, writing for the court, the Commission had appropriately determined that plaintiffs had complied with the requirements for invoking the State Tort Claims Act by filing an affidavit with the Commission that contained the required information. *Id.* ¶ 11. The Court of Appeals rejected the department's contention that "private persons cannot be held liable for regulatory actions" in an action brought pursuant to the State Tort Claims Act on the grounds that the department's

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

argument "misconstrues the meaning of 'private person' under the [State Tort Claims Act]," that the relevant legislation must " 'be construed so as to effectuate its purpose of waiving sovereign immunity so that a person injured by the negligence of a State employee may sue the State as he would any other person,' " and that "the 'private person' language within the [State Tort Claims Act] pertains to the nature of the proceedings but does not operate to bar waiver of sovereign immunity," with the department's argument to the contrary resting upon a "fail[ure] to acknowledge that many cases presented to the Commission and to [the Court of Appeals] on appeal involve regulatory action." *Id.* ¶ 12 (quoting *Zimmer v. N.C. Dep't of Transp.*, 87 N.C. App. 132, 136 (1987)).

¶ 12    In addition, the Court of Appeals held that, "[a]lthough the General Assembly has provided several remedies under the Administrative Procedure Act, the availability of an administrative remedy does not preclude plaintiff[s] from seeking a remedy under the [State Tort Claims Act]." *Id.* ¶ 14. In support of this proposition, the court cited *Nanny's Korner Day Care Center, Inc. v. North Carolina Department of Health and Human Services*, 264 N.C. App. 71, *appeal dismissed, disc. rev. denied*, 372 N.C. 700 (2019), in which the department had taken regulatory action against a daycare center and required the daycare center to notify its clients of an allegation of sexual abuse of one of its children by a staff member, resulting in a loss of business for the daycare center and its eventual closure. *Id.* at 73–75. The daycare center

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

sought relief from the department under the State Tort Claims Act and, subsequently, instituted a civil action in superior court in which it alleged that it had been injured as the result of a deprivation of its due process rights. *Id.* at 75. Although the Court of Appeals concluded that the daycare center's claim under the State Tort Claims Act was barred by the applicable statute of limitations, it also held that the daycare center had no right to assert a direct constitutional claim against the department on the grounds that it "had an adequate state remedy in the form of the Industrial Commission through the [State] Tort Claims Act," with the fact that the daycare center had failed "to comply with the applicable statute of limitations not render[ing] its remedy inadequate." *Id.* at 79–80. In this case, the Court of Appeals held that, in light of its prior decision in *Nanny's Korner*, it was required to hold that "a regulated entity has a state remedy under the [State Tort Claims Act]." *Cedarbrook*, ¶ 16.

¶ 13          Moreover, the Court of Appeals agreed with the Commission that the 2008 amendments to the State Tort Claims Act relating to the availability of the public duty doctrine as a defense in proceedings initiated pursuant to State Tort Claims Acts precluded the department from invoking the public duty doctrine as an affirmative defense in this case, *id.* ¶¶ 19–20, with the Court of Appeals having reached this result based upon this Court's decision in *Ray v. North Carolina Department of Transportation*, in which we recognized that, even though the new statute

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

"incorporated much of our public duty doctrine case law," the General Assembly had "also made clear that the doctrine is to be a more limited one than the common law might have led us to understand," 366 N.C. 1, 7 (2012). The Court of Appeals held that, in light of the plain statutory language, the public duty doctrine is only available as a defense in a proceeding held pursuant to the State Tort Claims Act if the alleged injury "is the result of (1) a law enforcement officer's negligent failure to protect the plaintiff from actions of others or an act of God, or (2) a State officer's, employee's, involuntary servant's, or agent's negligent failure to perform a health or safety inspection required by statute." *Id*. at 8 (citing N.C.G.S. § 143-299.1A(a)). As a result of the fact that "plaintiffs' claim is based on allegedly negligent licensure actions taken after a series of inspections" rather than upon an "alleged[ly] negligent failure *to perform* a health or safety inspection," the Court of Appeals held that the public duty doctrine did not operate to bar the assertion of plaintiffs' claim against the department in this proceeding. *Cedarbrook*, ¶ 23 (emphasis in original).

The Court of Appeals also rejected the department's contention that plaintiffs had failed to state a claim against the department sounding in negligence, concluding that this aspect of the department's argument was "intertwined with its interpretation of the public duty doctrine" and that, since the department was not entitled to invoke the public duty doctrine in bar of plaintiffs' claims, its challenge to the sufficiency of plaintiffs' negligence claims necessarily failed as well. *Id*. ¶ 25. In

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

addition, the Court of Appeals noted that "[the department's] argument that it should not be held liable for acting intentionally pursuant to authority granted by the General Assembly 'overlooks the fact that the focus is not on whether [the department's] actions were intentional, but rather whether [it] intended to injure or damage [plaintiffs],' " *id.*, ¶ 26 (quoting *Crump*, 216 N.C. App. at 44–45), so that, "[i]n order for [the department's] argument to succeed," "a showing that [the department's] employees intended to cause harm to plaintiffs would be required," with "[n]othing in the record" tending to "suggest that [they] intended to" do so, *id.* ¶ 26.

¶ 15    Finally, the Court of Appeals observed that "[o]ur Courts have repeatedly affirmed the Commission's authority to make determinations of negligence where a party alleges harm caused by an agency's regulatory actions" and that it was "not persuaded by [the department's] concern that affirming the Commission here will encourage regulators to abandon their statutorily mandated duties." *Id.* ¶ 31. The Court of Appeals pointed out that the General Assembly served as the policy-making body in state government and that the department's public policy concerns "would be more appropriately directed to the General Assembly," particularly given that "the General Assembly [had] limited the applicability of the public duty doctrine through legislative action." *Id.* ¶ 32.

¶ 16    Judge Dietz filed a separate opinion in which he concurred in the logic adopted by the court while emphasizing the binding nature of *Nanny's Korner* and attempting

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

to refute arguments that were advanced in the dissenting opinion by Judge Tyson. *Id.* ¶¶ 35–37 (Dietz, J., concurring). Among other things, Judge Dietz observed that, while the policy considerations raised by the department and in Judge Tyson's dissent "might be reasons for our Supreme Court to exercise its discretion to take this case and examine the holding in *Nanny's Korner*," the Court of Appeals was required to follow its own existing precedent. *Id.* ¶ 38.

¶ 17        In his dissenting opinion, Judge Tyson asserted that plaintiffs had "failed to show any legal duty owed or breach thereof, or proximate cause in their putative negligence action"; that "[c]laims challenging an agency's regulatory actions are properly heard under the North Carolina Administrative Procedure Act"; and that the Court of Appeals' decision "will lead to a stampede of nonjusticiable suits against regulatory state agencies which are clearly barred by sovereign immunity except for the limited waiver of that immunity under the [State Tort Claims Act]." *Id.* ¶ 39 (Tyson, J., dissenting). According to Judge Tyson, "[i]t has long been established that an action cannot be maintained against [a state agency] unless it consents to be sued or upon its waiver of immunity, and that *this immunity is absolute and unqualified*." *Id.* ¶ 47 (quoting *Guthrie v. N.C. St. Ports Auth.*, 307 N.C. 522, 534 (1983)) (emphasis in *Guthrie*, alterations added by Judge Tyson). As a result, Judge Tyson explained, "[t]he State is immune from suit unless and until it has expressly consented to be sued." *Id.* ¶ 48 (quoting *Guthrie*, 307 N.C. at 534).

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

¶ 18        Although Judge Tyson agreed with his colleagues that the State Tort Claims Act constitutes a partial waiver of the State's sovereign immunity, he concluded that the "private person" clause constitutes "a substantive statutory limiting requirement." *Id*. ¶ 53 (citing *Frazier v. Murray*, 135 N.C. App. 43, 48 (1999)). According to Judge Tyson, plaintiffs' allegations "are wholly based on regulatory actions and sanctions [that the department] cited plaintiff[s] for violating," with "[n]o 'private person' [having] any right or authority to perform these exclusively state regulatory actions or to inspect or sanction a licensee for violations of laws and regulations." *Id*. ¶ 54 (citing N.C.G.S. § 131D-2.4).

¶ 19        In addition, Judge Tyson concluded that plaintiffs had failed to properly plead a viable negligence claim given their failure to establish that the department owed them a "duty not to 'negligently regulate' " Cedarbrook, that any breach of such a duty had occurred, or that "the purported breach was the proximate cause of their harm." *Id*. ¶ 62. Judge Tyson distinguished this case from an earlier, unpublished Court of Appeals decision in which the estate of an elderly adult care home resident filed a claim against the department under the State Tort Claims Act after the resident disappeared from the facility and was later declared deceased. *Tang v. N.C. Dep't of Health & Hum. Servs.*, 2021 WL 5071898, 2021-NCCOA-611, ¶¶ 8–11 (unpublished). In that case, the Court of Appeals upheld the Commission's determination that the department owed a statutory duty of care to adult care home

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

residents to ensure that the facilities in which they were living were operated safely, that "[t]here was competent evidence for the Commission to find that [the department] breached its duty to plaintiff in failing to properly assess [safety] violations at [the facility] and in failing to take reasonable steps to address the deficiencies," and that the department's violations of this duty proximately resulted in the resident's death. *Id* ¶ 27. In reaching this result, the Court of Appeals noted that the Commission had found that "it was foreseeable that [the department's] failure to exercise its regulatory authority to address [nonoperational alarms on the facility's exit doors]—at a facility known for past deficiencies and non-compliance— would result in [the resident's] injury." *Id*. ¶ 28.

After considering the Court of Appeals' decision in this case in comparison with the approach adopted in *Tang*, Judge Tyson concluded that his colleagues were holding the department and other state regulatory agencies to "an impossible standard" under which they would be "(1) liable for enforcing the statutory mandates; and, (2) also liable for failing to enforce those very same statutory mandates with the Industrial Commission sitting in judgment of their 'reasonableness.' " *Cedarbrook*, ¶ 66. For this reason, Judge Tyson would have concluded that "[t]he limited waiver of sovereign immunity under the [State Tort Claims Act] simply does not recognize or permit plaintiff[s'] claim." *Id*.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

¶ 21 Finally, Judge Tyson disputed the validity of his colleagues' conclusion that *Nanny's Korner* constituted controlling precedent for purposes of this case on the grounds that the language upon which the majority of the Court of Appeals had relied was mere dicta. *Id.* ¶ 69. Instead, Judge Tyson would have held that, in the event that the department "or its employee-agent did not act professionally or reasonably during the scope of their investigation or in preparing its 400-page 'Statement of Deficiencies,'" the Administrative Procedure Act "provides an adequate and exclusive state remedy for allegedly improper or unjustified regulatory action by a state agency or employees." *Id.* ¶ 71. According to Judge Tyson, "[i]f plaintiff[s] had continued to pursue [their] claims before the [Office of Administrative Hearings] and won, [they] could have pursued reversal of the administrative action, remedial actions, and an award of attorneys' fees in the contested case by showing [that the department] 'substantially prejudiced' its rights and acted 'arbitrarily or capriciously.'" *Id.* ¶ 72 (quoting N.C.G.S. § 150B-33). The department noted an appeal to this Court based upon Judge Tyson's dissent.

## II. Analysis

### A. Standard of Review

¶ 22 Although an order denying a motion to dismiss based upon the doctrine of sovereign immunity is interlocutory, such orders are immediately appealable because they affect a substantial right. *State ex rel. Stein v. Kinston Charter Acad.*, 379 N.C.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

560, 2021-NCSC-163, ¶ 23; N.C.G.S. § 7A-27(b)(3)(a) (2021). Appellate courts review the denial of a motion to dismiss based on the doctrine of sovereign immunity utilizing a de novo standard of review. *White v. Trew*, 366 N.C. 360, 363 (2013). The dismissal of a pleading based upon a failure to state a claim for which relief can be granted pursuant to N.C.G.S. §1A-1, Rule 12(b)(6) is appropriate when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002). In reviewing the sufficiency of claims asserted against state agencies pursuant to the State Tort Claims Act, "we treat [the] plaintiff's factual allegations contained in his affidavit before the Industrial Commission as true." *Hunt v. N.C. Dep't of Lab.*, 348 N.C. 192, 194 (1998).[5]

**B. Sovereign Immunity and the State Tort Claims Act**

In seeking relief from the decisions of the lower courts before this Court, the department begins by arguing that it is shielded by sovereign immunity from tort

---

[5] Although plaintiffs contend in their brief that, in asserting that its regulatory actions were necessary to ensure compliance with the relevant laws and the applicable standards of care, the department "ignores the appropriate standard of review" and "disregards the operative facts entirely," the extent to which the actions that the department took against Cedarbrook were legally or factually justified has no bearing upon whether the claim that plaintiffs have asserted against the department is cognizable under the State Tort Claims Act. As a result, while the allegation set out in the claim and affidavit are assumed to be true, the extent to which plaintiffs are or are not entitled to assert a negligence-based claim for damages against the department and whether the department owes plaintiffs a legally recognized duty does not hinge upon the nature or extent of the underlying facts.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

liability arising from the actions that it took in regulating Cedarbrook and that the State Tort Claims Act does not effect even a partial waiver of its sovereign immunity defense to such a claim. We find the department's argument to be persuasive.

¶ 24        The common law doctrine of sovereign immunity is well-established in North Carolina and "prevents a claim for relief against the State except where the State has consented or waived its immunity." *Kinston Charter Acad.*, ¶ 21 (quoting *Harwood v. Johnson*, 326 N.C. 231, 238 (1990)). Sovereign immunity is "absolute and unqualified," *Guthrie*, 307 N.C. at 534, and "so firmly established that it should not and cannot be waived by indirection or by procedural rule" and can only be foregone "by plain, unmistakable mandate of the lawmaking body," *Orange Cnty. v. Heath*, 282 N.C. 292, 296 (1972). As a result, the State and its agencies are "immune from suit unless and until [the State] has expressly consented to be sued," *Guthrie*, 307 N.C. at 534 (quoting *Great Am. Ins. Co. v. Gold*, 254 N.C. 168, 173 (1961)), with statutes "that permit suit in derogation of sovereign immunity [to] be strictly construed," *Stone v. N.C. Dep't of Lab.*, 347 N.C. 473, 479 (1998); *see also Guthrie*, 307 N.C. at 538.

¶ 25        The General Assembly enacted the State Tort Claims Act in 1951, in which it constituted the Commission as "a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State." N.C.G.S. § 143-291(a).

> The Industrial Commission shall determine whether or not each individual claim arose as a result of the negligence of

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

> any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

*Id.* In the event that the Commission concludes that an officer, employee, involuntary servant, or agent of the State acted negligently in the course of carrying out his or her public duties and that those injuries proximately resulted in any injury to the plaintiff, the Commission is required to determine the amount of damages to which the plaintiff is entitled, subject to a statutory cap of $1,000,000 per person, per occurrence. *Id.*; N.C.G.S. § 143-299.2. Thus, by enacting the State Tort Claims Act, the State "partially waived its sovereign immunity by consenting to direct suits brought as a result of negligent acts committed by its employees in the course of their employment." *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 329 (1982).

¶ 26 According to the department, the fact that the State Tort Claims Act operates in partial derogation of the State's sovereign immunity means that its provisions must be strictly construed, citing *Stone*, 347 N.C. at 479. First, the department argues that the "plain language and legislative history of the [State] Tort Claims Act show that the General Assembly intended to waive sovereign immunity from traditional tort claims, not regulatory action by the State." Second, the department contends that it cannot be sued by Cedarbrook based upon the regulatory actions that it took against the facility given that the State Tort Claims Act "only permits parties

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

to sue state agencies 'where the [agency], *if a private person*, would be liable,' " with private persons being unable to exercise regulatory authority, quoting N.C.G.S. § 143-291(a) (alteration and emphasis added in brief). Third, the department argues that the Court of Appeals "incorrectly construed the [State] Tort Claims Act to circumvent the limited remedies the General Assembly established for challenges to regulatory action," which allow adult care homes to challenge penalties and suspensions in accordance with the applicable provisions of the Administrative Procedure Act, citing N.C.G.S. §§ 131D-2.7(d)(4), -34(e). In other words, the department argues, "[a]lthough the General Assembly made clear that adult care homes may contest [the department's] regulatory actions [in the Office of Administrative Hearings], it did not authorize such facilities to pursue a claim for damages" and that, "[e]ven when an adult care home successfully contests a suspension or penalty, the legislature provided no mechanism that would allow a facility to recover compliance costs it may have incurred in dealings with its regulators."

¶ 27 Finally, the department argues that *Nanny's Korner* "cannot support the weight the Court of Appeals majority placed on it" given that *Nanny's Korner* arose from a trial court's decision to dismiss a constitutional due process claim rather than a decision by the Commission under the State Tort Claims Act and given that the Court of Appeals in that case "did not analyze the 'private person' standard under the [State] Tort Claims Act, the elements of a negligence claim involving regulatory

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

action, or the public duty doctrine." According to the department, the issue before the Court of Appeals in this case "was simply not the focus of *Nanny's Korner*, and the [Court of Appeal's] indirect and unnecessary comments in that case, without benefit of full briefing and argument, did not provide a sufficient basis for the Court of Appeals to create a new cause of action against the State" that had not previously been recognized. In any event, the department argues, this Court is not bound by *Nanny's Korner*.

¶ 28    In response, plaintiffs assert that "the [State] Tort Claims Act contains no carve-out for agency exercise of regulatory authority" and, instead, "expressly provides that a claim is available as a result of the negligence of any agency employee 'acting within the scope of his office, employment . . . or authority,'" quoting N.C.G.S. § 143-291(a) (emphasis added in brief). According to plaintiffs, "[j]ust as driving a bus is within a bus driver's scope of employment, [the department's] licensure actions against Cedarbrook were within the scope of its employees' authority" and, for that reason, fall within the scope of the State Tort Claims Act. Plaintiffs argue that the department "turns the meaning of the 'private person' clause on its head, as a mechanism to assume away agency misconduct rather than an acknowledgement of the waiver of sovereign immunity." In plaintiffs' view, the "private person" language "merely serves to effectuate one of the [State] Tort Claims Act's two purposes: waiving sovereign immunity," quoting *Patrick v. N.C. Dept' of Health & Hum. Servs.*, 192 N.C.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

App. 713, 719 (2008). As a result, plaintiffs contend that the department's position "is unsupported by the plain language of the [State] Tort Claims Act, its purpose as a waiver of sovereign immunity, and the cases that address the 'private person' clause."

¶ 29 A careful consideration of the record in light of the applicable law persuades us that the department has the better of this dispute. As an initial matter, plaintiffs have not cited, and our own research has not identified, any decision of either this Court or the Court of Appeals in the more than seventy years since the enactment of the State Tort Claims Act that suggests that an entity subject to regulation by a state agency is entitled to assert a claim for damages against that agency predicated on the theory that the agency regulated the entity in question in a negligent manner. The absence of such authority is telling given that thousands of businesses, nonprofits, and other entities have been subject to regulatory actions by state agencies, many of which undoubtedly believe that they have suffered reputational and financial harm as the result of misguided regulatory decisions. *See, e.g., Ocean Hill Joint Venture v. N.C. Dep't of Env't, Health & Nat. Res.*, 333 N.C. 318 (1993) (addressing a developer's administrative challenge to the imposition of civil penalties by the Department of Environment, Health and Natural Resources stemming from alleged violations of the Sedimentation Pollution Control Act); *Parkway Urology, P.A. v. N.C. Dep't of Health & Hum. Servs.*, 205 N.C. App. 529 (2010) (addressing a hospital's challenge to a

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

decision by the Department of Health and Human Services to award a certificate of need to a nearby hospital allowing it to purchase a piece of equipment used for cancer treatment, in which the challenger alleged that the department's decision would reduce the number of patients that it could serve and substantially and adversely affect its revenues).  The absence of any authority indicating that the legal theory upon which plaintiffs rely has any viability strongly suggests that it does not.

¶ 30    In the lengthy period prior to the enactment of the State Tort Claims Act, the General Assembly addressed claims advanced by private citizens seeking compensation for personal injuries arising from State action by enacting case-specific pieces of legislation or delegating authority to various state agencies to adjudicate the validity of such claims.  *See A Survey of Statutory Changes in North Carolina in 1951*, 29 N.C. L. Rev. 351, 417 (1951).  For example, in 1935, the General Assembly enacted legislation authorizing the State Board of Education to settle personal injury and wrongful death claims arising from accidents involving school buses, regardless of the extent to which those actions stemmed from negligent conduct.  *Id.* (citing N.C.G.S. §§ 115-340 to -346 (now repealed)).  Similarly, in 1947, the General Assembly "lumped private claims in an omnibus bill, and authorized the state agencies concerned, upon investigation, to pay claimants not in excess of the sums listed therein."  *Id.* (citing An Act to Provide for the Investigation and Payment of Certain Claims Growing Out of Motor Vehicle Accidents Involving Governmental

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

Employees, ch. 1092, 1947 N.C. Sess. Laws 1640, 1640–46). Finally, the 1949 General Assembly enacted legislation, which was something of a precursor to the State Tort Claims Act, authorizing the Commission to hear and settle specific negligence claims, most of which arose from accidents involving school buses, that had been asserted against various state agencies. *Id.* (citing An Act to Authorize the North Carolina Industrial Commission to Hear and Determine Certain Tort Claims Against State Departments and Agencies, ch. 1138, 1949 N.C. Sess. Laws, 1360, 1360–74).

With the passage of the State Tort Claims Act in 1951, the General Assembly created a "permanent machinery . . . to handle future negligence claims against the state." *Id.* As one contemporaneous law review article explained, the State Tort Claims Act

> provides for both administrative and judicial settlement of claims against all departments, institutions[,] and agencies of the state, resulting from a negligent act of a state employee while acting within the scope of his employment and without contributory negligence on the part of the claimant. *If not expressly, clearly by implication [the Act] contemplates both personal injury and wrongful death claims. Whether a claim may be filed for property injury is not so clear.*

*Id.* (emphasis added). As a result, the legislative history of the State Tort Claims Act suggests that the General Assembly intended to create a formal mechanism to address personal injury and wrongful death claims asserted against the State by private citizens stemming from alleged negligence on the part of the relevant state

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

employees in lieu of the ad hoc method for addressing such claims that had existed until that point in time.[6]

¶ 32        At the time that it enacted the State Tort Claims Act, the General Assembly "incorporated the common law of negligence," *Stone*, 347 N.C. at 479, meaning that, when such claims are brought before the Commission, "negligence is determined by the same rules as those applicable to private parties," *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709 (1988); *accord Barney v. N.C. State Highway Comm'n*, 282 N.C. 278, 284 (1972). As we noted in *Bolkhir*, "[t]he essence of negligence is behavior creating an unreasonable danger to others," so that, in order to establish negligence for purposes of the State Tort Claims Act, "[a] plaintiff must show that: (1) [the] defendant failed to exercise due care in the performance of some legal duty owed to [the] plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." *Bolkhir*, 321 N.C. at 709.

---

[6] The subsequent revisions that the General Assembly has made to the State Tort Claims Act likewise demonstrate that the General Assembly primarily contemplated liability arising from a state employee's involvement in automobile accidents. For example, a report submitted to the 1999 General Assembly by the Legislative Research Commission regarding the estimated cost of raising the statutory cap on recovery under the State Tort Claims Act from $150,000 to $500,000 focused on liability arising from automobile accidents. *See* Legislative Research Commission, State Tort Liability & Immunity, Report to the 2000 Session of the 1999 General Assembly of North Carolina, 29–31 (2000), https://www.ncleg.gov/files/library/studies/2000/st11064.pdf. According to the report, of the $6,736,781 that the Commission had awarded pursuant to the State Tort Claims Act during the 1998–1999 reporting period, $5,874,041, or 87%, stemmed from losses arising from automobile and school bus accidents. *Id*. at 30.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

The history of litigation under the State Tort Claims Act clearly indicates that it was intended to address traditional kinds of negligence claims, with this Court and the Court of Appeals having routinely considered cases involving traditional negligence-based torts under the rubric of the State Tort Claims Act. In *Bolkhir*, for example, the plaintiff's son was injured when he fell through the glass paneling of a screen door at the entrance of the university-owned apartment in which the plaintiff and his family were living. *Id.* at 708. The plaintiff sued under the State Tort Claims Act, with the Commission ultimately "conclude[ing] that [the] defendant's employee negligently created an unsafe condition" by replacing the screen door's mesh paneling with glass paneling. *Id.*; *see also Lyon & Sons, Inc. v. N.C. State Bd. of Educ.*, 238 N.C. 24, 25 (1953) (holding that a school bus driver employed by the State negligently backed a bus into the plaintiff's automobile); *Brewington v. N.C. Dep't of Corr.*, 111 N.C. App. 833, 834 (1993) (holding that an inmate incarcerated in a state correctional facility had been injured in a fall resulting from negligent maintenance by the staff of the facility in which the inmate was housed).

The claim that plaintiffs have asserted against the department in this case bears no resemblance to the types of negligence claims for which the State Tort Claims Act has traditionally provided a means for obtaining a recovery against a state agency. A careful reading of the claim that plaintiffs have asserted against the department indicates that it rests entirely upon discretionary actions that were taken

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

in pursuit of the department's statutory authority to regulate adult care homes. As a result, even though their claim is not couched in such terms, plaintiffs are seeking to recover damages from the department for what amounts to "negligent regulation," *Cedarbrook*, ¶ 44 (Tyson, J., dissenting), which is not the sort of claim that any North Carolina court has previously recognized. On the contrary, this Court has held that, when the General Assembly "has vested [a state agency] with broad powers to protect the health and well-being of the general public," the discretionary decisions that it makes in exercising that authority "are not generally the type of decisions for which the State is liable to private citizens in tort." *Myers v. McGrady*, 360 N.C. 460, 468 (2006).

¶ 35     In addition, the plain language of the State Tort Claims Act forecloses claims like those that plaintiffs have attempted to assert in this case. As has already been noted, the Act only permits private parties to bring claims under the State Tort Claims Act in situations in which "the State of North Carolina, *if a private person*, would be liable to the claimant in accordance with the laws of North Carolina." N.C.G.S. § 143-291(a) (emphasis added). Put another way, "[u]nder the Act[,] the State is liable *only* under circumstances in which a private person would be." *Stone*, 347 N.C. at 478 (emphasis in original); *see also Guthrie*, 307 N.C. at 536–37 (holding that claims "under the provision of [the State Tort Claims Act are] limited to the same category with respect to tort claims against the agency covered as if such agency were

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

a private person and such private person would be liable under the laws of North Carolina") (quoting *Branch Banking & Tr. Co. v. Wilson Cnty. Bd. of Educ.*, 251 N.C. 603, 609 (1960)). Private persons do not, of course, exercise regulatory power and, therefore, cannot be held liable for engaging in regulatory activities in a negligent manner. *See Stone*, 347 N.C. at 478 (explaining that "[o]nly governmental entities possess authority to enact and enforce laws for the protection of the public").[7] As a result, the plain language of the State Tort Claims Act precludes a finding that a state agency is liable to a private party for what amounts to negligent regulation.

¶ 36    In allowing plaintiffs' claims under the State Tort Claims Act to proceed, the Court of Appeals concluded that "the 'private person' language within the [State Tort Claims Act] pertains to the nature of the proceedings but does not operate to bar waiver of sovereign immunity." *Cedarbrook*, ¶ 12. The Court of Appeals did not cite any authority in support of this statement, and it is not entirely clear to us what the

---

[7] *Stone* was the first case to recognize that the State Tort Claims Act incorporated the common law public duty doctrine, which "provides that governmental entities and their agents owe duties only to the general public, not to individuals, absent a 'special relationship' or 'special duty' between the entity and the injured party." 347 N.C. at 477–78 (citing *Braswell v. Braswell*, 330 N.C. 363, 370–71 (1991)). Although the General Assembly amended the State Tort Claims Act in 2008 for the purpose of limiting the circumstances under which the public duty doctrine constituted a defense to claims against the State, *see* An Act to Limit the Use of the Public Duty Doctrine as an Affirmative Defense for Claims Under the State Tort Claims Act in which the Injuries of the Claimant are the Result of the Alleged Negligent Failure of Certain Parties to Protect Claimants from the Action of Others, S.L. 2008-170, § 1, 2008 N.C. Sess. Laws 690, 691 (codified at N.C.G.S. § 143-299.1A), the 2008 amendments did not disturb this Court's understanding of the "private person" provision of N.C.G.S. § 143-291(a).

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

court meant in making it. If the Court of Appeals intended to suggest that the State Tort Claims Act is merely intended to allow State agencies to be held liable under the same procedures that could be used to hold private persons liable in tort, we are unable to accept that logic for two reasons. First, tort claims against the State are heard by the Commission, while tort claims against private persons are adjudicated in the General Court of Justice. *Compare* N.C.G.S. § 143-291(a) *with* N.C.G.S. § 7A-240. Second, the State Tort Claims Act provides that the State will be held liable under "*circumstances* [i.e., a set of facts] where . . . a private person[ ] would be liable" under North Carolina law rather than in accordance with the "proceedings" by which a private person would be held liable. N.C.G.S. § 143-291(a) (emphasis added). As a result, the Court of Appeals' apparent understanding of the "private person" provision found in N.C.G.S. § 143-291(a) finds no support in either our precedent or the relevant statutory language.

¶ 37      In addition, the Court of Appeals' understanding of the "private person" provision cannot be squared with the relevant canons of statutory construction. According to well-established North Carolina law, "when construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself" and, "when the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute." *State v. Morgan*, 372 N.C. 609, 614 (2019) (cleaned up). As we have already explained, the State Tort

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

Claims Act permits an individual to sue the State when an agent or employee of the State acts in a negligent manner and under circumstances in which liability in tort would arise under North Carolina law if that agent or employee were acting in his or her private capacity. *See Frazier*, 135 N.C. App. at 48 (observing that "[t]ort liability for negligence attaches to the state and its agencies under the [State] Tort Claims Act only 'where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina' ") (quoting N.C.G.S. § 143-291(a)). As a result, we agree with Judge Tyson that the "private person" language contained in N.C.G.S. § 143-291(a) imposes a substantive, rather than a procedural, limitation upon the types of claims that are cognizable under the State Tort Claims Act. *Cedarbrook*, ¶ 53 (Tyson, J., dissenting).

¶ 38 In the event that, contrary to our reading of the relevant statutory language, the "private person" provision contained in N.C.G.S. § 143-291(a) was deemed to be ambiguous, we "must interpret the statute to give effect to legislative intent." *State v. Curtis*, 371 N.C. 355, 358 (2018) (cleaned up). As is demonstrated by even a cursory examination of the Administrative Procedure Act, the General Assembly has enacted a process by which regulated entitles are entitled to challenge the lawfulness of and seek redress from allegedly unlawful regulatory actions. More specifically, N.C.G.S. §§ 131D-2.7(d)(4) and 131D-34(e) provide that parties wishing to contest the validity of a departmental decision to suspend admissions to an adult care home or to

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

challenge a penalty that the department has sought to impose arising from deficiencies in the operation of an adult care home are entitled to a hearing in accordance with the Administrative Procedure Act. *See* N.C.G.S. § 150B-1 *et seq*.; s*ee also Empire Power Co. v. N.C. Dep't of Env't Mgmt.*, 337 N.C. 569, 594 (1994) (recognizing that "[t]he primary purpose of the [Administrative Procedure Act] is to confer procedural rights, including the right to an administrative hearing, upon any person aggrieved by an agency decision"). We have difficulty concluding that the General Assembly would create a specific process pursuant to which regulated entities are entitled to challenge the lawfulness of a state agency's regulatory decisions while simultaneously waiving sovereign immunity so as to allow those entities to assert a negligence-based claim for damages against the agency arising from the same regulatory decision under the State Tort Claims Act, particularly given this Court's consistent recognition that statutes in "derogation of sovereign immunity should be strictly construed." *Stone*, 347 N.C. at 479; *see also Guthrie*, 307 N.C. at 538. As a result, basic principles of statutory construction suggest that any uncertainty concerning the meaning of the "private person" language contained in N.C.G.S. § 143-291(a) should be resolved *against*, rather than in favor of, a waiver of sovereign immunity.[8]

---

[8] Plaintiffs cite *Patrick* for the proposition that the "private person" language does not bar their claims because it "merely serves to effectuate one of the [State] Tort Claims Act's two purposes: waiving sovereign immunity." 192 N.C. App. at 719 (citing *Teachy*, 306 N.C.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

¶ 39　　　　The interpretation of the "private person" provision of N.C.G.S. § 143-291(a) that we believe to be appropriate is consistent with the manner in which the federal courts have interpreted the virtually identical provision that appears in the Federal Tort Claims Act, with this Court having previously examined cases arising under the Federal Tort Claims Act in interpreting the State Tort Claims Act. *See, e.g., Lyon & Sons*, 238 N.C. at 32–33 (discussing interpretations of the Federal Tort Claims Act and applying those interpretations in construing its North Carolina analogue). According to the Federal Tort Claims Act, federal district courts have exclusive jurisdiction over

> civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant* in accordance with the law of the place where the act or omission occurred.

at 329). The issue in *Patrick*, however, was whether the plaintiff's claim against the department in that case was barred by *public official immunity*. *Id.* at 716. The Court of Appeals rejected an argument advanced by the department that, because public official immunity protected its individual employees as "private persons" from liability for performing discretionary governmental duties absent evidence of malice or corruption, the department could not be held liable under the State Tort Claims Act. *Id.* at 718. Thus, the *Patrick* court's discussion of the "private person" language merely indicates that the department could not escape the limited waiver of sovereign immunity provided in the State Tort Claims Act on the grounds that the employees whose alleged negligence gave rise to the claim could not be held liable as individuals.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

28 U.S.C. § 1346(b)(1) (emphasis added). Federal courts have held that the reference to a "private person" in 28 U.S.C. § 1346(b)(1) imposes a substantive limit upon the types of tort claims that can be asserted against the United States that requires that those claims be comparable to the types of claims that could be asserted against a private person. *See., e.g., C.P. Chem. Co. v. United States*, 810 F.2d 34, 37 (2d Cir. 1987) (holding that "[t]he plain meaning of section 1346(b) is that the United States cannot be held liable when there is no comparable cause of action against a private citizen"); *Jayvee Brand, Inc. v. United States*, 721 F.2d 385, 390 (D.C. Cir. 1983) (concluding that "quasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law").

¶ 40    In *Jayvee Brand*, a children's sleepwear manufacturer sued the Consumer Product Safety Commission under the Federal Tort Claims Act seeking monetary damages that the manufacturer alleged to have been negligently caused by the Commission's regulatory actions. 721 F.2d at 387. After agreeing that the Commission had acted unlawfully by failing to follow proper procedures in the course of taking the challenged regulatory action and that these "wrongful acts" had been committed by an " 'employee of the Government while acting within the scope of his office or employment,' " the United States Court of Appeals for the District of Columbia Circuit concluded that, since these actions were "of the type that private

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

persons could not engage in and hence could not be liable for under local law," the federal courts lacked "jurisdiction to entertain a suit against the federal government" under the Federal Tort Claims Act. *Id*. at 390 (quoting 28 U.S.C. § 1346(b)(1)). In support of this determination, the court explained that

> [a]ppellants ask us to make a major innovation in the law by holding that the [Federal Tort Claims Act] provides damage actions as an additional means of policing the internal procedures of governmental agencies. They have not, however, given us particularly good reasons for such an extraordinary step, and everything we have seen counsels against it. There is, in the first place, absolutely no evidence that in enacting the [Federal Tort Claims Act] Congress intended to police internal governmental law-making procedures with damage actions. Appellants' theory of governmental liability because of the [Commission's] failure to follow the procedures specified by section 371(e) of the Federal Food, Drug, and Cosmetic Act would seem to impose liability for any agency's failure to follow procedures prescribed by any regulation or statute, including the Administrative Procedure Act. Congress has provided elaborate mechanisms of judicial review so that rules adopted by improper procedures may be declared nullities. Nowhere, so far as we are aware, has Congress stated that, in addition, the affected parties could collect damages from the government. Surely, so striking a mode of policing procedural regularity as the use of damage actions for millions or hundreds of millions of dollars would have been mentioned. Appellants have drawn our attention to no language in any statute or any legislative history that suggests a conscious intention by any member of Congress to accomplish such a result. That in itself would appear nearly conclusive of the issue before us. It may also be significant that no plaintiffs before those here have ever advanced such a theory. These are negative reasons to doubt that Congress intended the government

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

> to be liable in damages for adopting a rule through defective procedures.

*Id*. at 391.

¶ 41    Similarly, in analyzing the legislative intent underlying the enactment of the Federal Tort Claims Act, the Supreme Court of the United States observed that "it was not intended that the constitutionality of legislation, the legality of regulations, *or the propriety of a discretionary administrative act* should be tested through the medium of a damage suit for tort." *Dalehite v. United States*, 346 U.S. 15, 27 (1953) (cleaned up) (emphasis added). Instead, the Court concluded, the legislative history of the Federal Tort Claims Act revealed that "[u]ppermost in the collective mind of Congress were the ordinary common-law torts." *Id*. at 28.

¶ 42    The same observations can be made about the State Tort Claims Act. As we have already noted, plaintiffs have provided no support for a conclusion that the General Assembly "intended to police internal governmental law-making procedures with damage actions." *Jayvee Brand*, 721 F.2d at 391. On the contrary, the General Assembly enacted the Administrative Procedure Act, which provides a mechanism for challenging allegedly unlawful actions taken by regulatory agencies such as the department, for that purpose. Considering the existence of this remedy for unlawful regulatory actions provided by the Administrative Procedure Act, it is difficult for us to believe the General Assembly also intended for a plaintiff to be able to bring what amounts to a damage claim for "negligent regulation" against a regulatory agency.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

Had it intended to make both such remedies available to parties adversely affected by the regulatory actions taken by state agencies, we believe that the General Assembly would have more clearly indicated that such suits were available than is evident from an examination of the relevant existing statutory provisions.[9] This is especially true given the general principle that a waiver of sovereign immunity must be explicit rather than implied. *See Heath*, 282 N.C. at 296. As a result, our review of the relevant federal precedent and significance of that precedent for North Carolina law strongly counsels against acceptance of the theory that plaintiffs have espoused in this case.

¶ 43 In support of its decision to allow plaintiffs' claim against the department to proceed, the Court of Appeals relied upon its prior decision in *Nanny's Korner*. *Cedarbrook*, ¶ 16; *see also id.*, ¶ 38 (Dietz, J., concurring). In *Nanny's Korner*, a daycare center filed an affidavit under the State Tort Claims Act against the department's Division of Child Development and Early Education in which it sought to recover damages as the result of the department's alleged failure to conduct an independent investigation into the allegations of child sexual abuse that had been

---

[9] In addition to the complete absence of any precedent for plaintiffs' claim in the jurisprudence of this Court, the Court of Appeals, or the federal courts, plaintiffs have failed to identify, and we have not been able to find, a single decision in which the courts of any other state have allowed a regulated entity to assert a damage claim against a state agency stemming from the allegedly negligent exercise of that agency's discretionary regulatory authority.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

made against one of the daycare center's staff members. 264 N.C. App. at 75. After the Commission dismissed the daycare center's claim pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6), on the grounds that the center's claim was barred by the three-year statute of limitations applicable to claims asserted under the State Tort Claims Act, the daycare center argued that its claim was not time-barred and that it had "the right to bring a direct constitutional claim since no adequate state remedy exists." *Id.* at 75, 80. In rejecting the daycare center's argument, the Court of Appeals held that the center "[did] not have a direct constitutional claim because it had an adequate state remedy in the form of the Industrial Commission through the [State] Tort Claims Act." *Id.* at 80. However, the Court of Appeals continued, the Commission had correctly determined that the center's claim was barred by the applicable statute of limitations, with the daycare center's "failure to comply with the applicable statute of limitations not render[ing] its remedy inadequate" on the theory that, if the daycare center's "claim under the [State] Tort Claims Act had been successful, the remedy would have compensated [it] for the same injury alleged in the constitutional claim." *Id.*

¶ 44     Aside from the fact that *Nanny's Korner* is not binding on this Court, we agree with the department that the Court of Appeals did not fully examine the extent, if any, to which the State Tort Claims Act permits the type of claim that the daycare center pursued in that case and that is before us now. Instead, after concluding that

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

any claim that the center might have been able to assert pursuant to the State Tort Claims Act was time-barred, the Court of Appeals stated, without explaining or citing any supporting authority, that the State Tort Claims Act would have provided the daycare center with an adequate remedy sufficient to preclude the availability of a direct action under the state constitution. In other words, while the holding in *Nanny's Korner* speaks for itself, the legal analysis that the Court of Appeals conducted regarding the availability of the State Tort Claims Act under the circumstances presented in that case was merely cursory. Although we do not fault the Court of Appeals for relying upon *Nanny's Korner* as binding precedent in the present case, we also do not, following a more rigorous analysis of the pertinent legal questions, find *Nanny's Korner* to be persuasive, and for that reason overrule it to the extent it conflicts with this opinion.[10]

**C. Negligence**

---

[10] According to plaintiffs, *Nanny's Korner* demonstrates that "the effect of disallowing a claim under the [State] Tort Claims Act would be to create a constitutional claim where the legislature has already provided an adequate statutory remedy" and that, " '[w]here one of two reasonable constructions will raise a serious constitutional question, the construction which avoids this question should be adopted,' " quoting *Long v. Fowler*, 378 N.C. 138, 2021-NCSC-81, ¶ 24). For the reasons that we have already provided, however, the interpretation of the State Tort Claims Act upon which plaintiffs rely is not a reasonable one given that it has no support in the language or history of the State Tort Claims Act and given that there is no reason to believe that the General Assembly intended for the State Tort Claims Act to provide the sort of remedy plaintiffs seek. If plaintiffs believe that they have a valid constitutional claim against the department, they are free to pursue it in the appropriate forum if they so choose, but no claim of that nature is before us in this appeal, and we express no opinion concerning its legal or factual viability.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

¶ 45     In addition, the department contends that, even if plaintiffs' claims are not barred by the doctrine of sovereign immunity, they have failed to state a claim for relief sounding in negligence as required by the State Tort Claims Act. According to the department, "[p]laintiffs *must* plead duty, breach, causation, and damages—the foundational elements of every tort claim—to survive a motion to dismiss," but "[d]espite over 250 paragraphs of allegations," have failed to do so, citing *Stone*, 347 N.C. at 477. After careful consideration of the record in light of the applicable law, we conclude that plaintiffs have failed to allege the existence of the sort of legal duty necessary to support a negligence claim.

¶ 46     First, the department argues that plaintiff's "allegations that [the department] owes it a duty are conclusory assertions of law, unsupported by fact." In the department's view, the Court of Appeals erred in determining that, by "fil[ing] an affidavit containing five components required for all claimant affidavits asserting liability under the [State] Tort Claims Act," plaintiffs sufficiently stated a claim for negligence given that mere compliance with the filing requirements "does not relieve a plaintiff of its obligation to plead facts supporting its claim," citing *Cedarbrook*, ¶ 11. In addition, the department contends that the Court of Appeals "erred in conflating the public duty doctrine and the duty element of a negligence claim," reasoning that, even though these legal principles are related, the department's inability to rely upon the public duty doctrine as an affirmative defense has no

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

bearing upon the extent to which the department owed plaintiffs a duty of care sufficient to support the assertion of a negligence claim.

¶ 47        In the department's view, the Court of Appeals' decision "creates dueling tort duties that [the department] cannot satisfy consistent with the statutory obligations the General Assembly imposed on it." According to the department, the Court of Appeals' decision in this case, when read in conjunction with its decision in *Tang*, "would create an 'impossible standard' where [the department] would be liable for both 'enforcing [ ] statutory mandates' and 'for failing to enforce those very same mandates,' " quoting *Cedarbrook*, ¶ 66 (Tyson, J., dissenting). The department contends that, rather than placing it in "an untenable position that could endanger the residents that [the department] is charged with protecting," it "should be free to hold adult care homes responsible for properly supervising residents . . . without concern that a facility like Cedarbrook or its owner will sue [the department] in tort if it disagrees." The department claims that allowing the Court of Appeals' decision to stand "would be an unprecedented expansion of the [State] Tort Claims Act" given that departmental employees charged with regulating adult care homes "have only ever been charged with protecting the residents of those facilities, not the companies that operate them," and have never been held to "owe[ ] a duty to the *owners* of those companies, such that Mr. Leonard could attempt to hold [the department] liable for his lost profits on a planned sale of Cedarbrook." (emphasis in original).

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

¶ 48        Second, the department argues that plaintiffs' claim rests upon "intentional regulatory actions" in which its employees engaged and that "intentional, discretionary acts taken pursuant to regulatory authority do not give rise to a tort claim," citing *Williams v. N.C. Dep't of Just., Crim. Standards Div.*, 273 N.C. App. 209, 212 (2020); *Frazier*, 135 N.C. App. at 48. According to the department, the regulatory actions that its employees took in this case are similar to those at issue in *Williams* and *Frazier* in that, "[a]lthough [plaintiffs] label[ ] them as negligence, they are intentional actions by a state agency taken to administer and enforce laws passed by the General Assembly." In light of that fact, the department asserts that any "attempt to apply tort concepts like breach in the regulatory context" would be inappropriate given that constructs like the "reasonable person" standard are "ill-suited to analyzing [plaintiffs'] proposed claim of negligent regulation." As a result, the department contends that "the issues in this case, and the exercise of regulatory authority in general, present regulatory and policy questions that tort law was not designed to answer," with such questions being "best left to proceedings before an administrative law judge with specialized expertise, as the legislature intended."

¶ 49        Finally, the department argues that "[r]egulations do not proximately cause damages to a regulated entity in tort, and a regulated entity's compliance costs are not recoverable as damages." In the department's view, plaintiffs' alleged damages, which take the form of increased operating expenses associated with compliance with

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

the Directed Plan of Protection, lost revenue resulting from the suspension of further admissions to Cedarbrook, and lost profits from a failed attempt to sell Cedarbrook, "bear no resemblance to the kinds of damages recoverable in tort." The department argues that "it is the financial responsibility of business owners to run their businesses in accordance with state health and safety laws" and that, "if there is any question as to whether a certain cost should qualify as a business expense or a misapplication of regulatory action, the legislature has designated an administrative law judge as the arbiter of this decision." In addition, the department claims that, "[i]f individuals and businesses can bring tort actions against these agencies in the Industrial Commission simply by alleging that the agency acted 'unreasonably' in executing its regulatory duties[;] . . . the State's liability would be unmanageable and unprecedented." For all these reasons, the department contends that, even if the regulatory actions taken against Cedarbrook "were inconsistent with the law and administrative regulations governing adult care homes, as [p]laintiffs claim, this is not a tort."

¶ 50        Plaintiffs respond that both this Court and the Court of Appeals have held that agency personnel owe a duty of care in exercising their regulatory authority, citing *Multiple Claimants v. N.C. Dep't of Health & Hum. Servs.*, 361 N.C. 372, 378 (2007); *Gammons v. N.C. Dep't of Hum. Res.*, 344 N.C. 51, 63 (1996); *Tang*, ¶¶ 27–28; *Haas v. Caldwell Sys., Inc.*, 98 N.C. App. 679, 682–83 (1987); *Zimmer v. N.C. Dep't of*

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

*Transp.*, 87 N.C. App. 132, 132 (1987). In plaintiffs' view, an agency's duty of care "extends to the regulated party," which is "the party most directly affected by that exercise of authority," in cases in which "it is reasonably foreseeable that an agency's negligence in the exercise of regulatory authority could harm the parties the agency exercises that authority against." According to plaintiffs, both this Court and the Court of Appeals have endorsed awarding damages under the State Tort Claims Act in situations involving claims "arising from the negligent exercise of regulatory authority against the regulated party," citing *Watts v. N.C. Dep't of Env't & Nat. Res.*, 182 N.C. App. 178, 181–85 ) (2007), *aff'd* 362 N.C. 497 (2008); *Nanny's Korner*, 264 N.C. App. at 80; *Crump*, 216 N.C. App. at 46; *Russell v. N.C. Dep't of Env't & Nat. Res.*, 227 N.C. App. 306, 309 (2013); *Strickland v. UNC-Wilmington*, 213 N.C. App. 506, 511 (2011); *Husketh v. N.C. Dep't of Corr.*, No. COA09-411, 2010 WL 157557, at *3 (N.C. Ct. App. Jan. 19, 2010) (unpublished).

¶ 51       In addition, plaintiffs argue that the statutory scheme governing the operation of adult care homes imposes a legally enforceable duty on the department in favor of both the facility and the facility's residents. According to plaintiffs, "the statutory scheme recognizes that [adult care] homes provide important services in their local communities," with the General Assembly having "appropriately and necessarily balanced the needs of all actors in the adult care home industry—the residents; adult care homes, their staff, supervisors, and administrators; local departments of social

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

services; local management entities; physicians and other medical professionals; and [the department]." As a result, plaintiffs claim, "the rights of residents do not displace the rights of adult care homes themselves," with the statutory scheme "recogniz[ing] that [the department] owes duties to adult care homes like Cedarbrook."

¶ 52          Plaintiffs further contend that the intentional nature of the department's regulatory actions does not preclude the assertion of a negligence claim against the department on the theory that, even though the department "is correct that [plaintiffs'] claims are based—at least in part—on intentional conduct of [departmental] employees, the [c]omplaint does not allege that those employees <u>intended to cause harm</u> to [plaintiffs]." (emphasis in original). According to plaintiffs, the same argument upon which the department relies in this case was rejected in *Crump*, in which the Court of Appeals explained that "the focus is not on whether [the employee's] actions were intentional, but rather on whether he intended to injure or damage the [plaintiffs]," quoting *Crump*, 216 N.C. App. at 44–45. "In other words," plaintiffs explain, " '[o]ne who undertakes to do something and does it negligently commits a *negligent* act,' " quoting *Jackson v. N.C. Dep't of Crime Control & Pub. Safety*, 97 N.C. App. 425, 432 (1990) (emphasis added in brief).

¶ 53          Finally, plaintiffs argue that they are entitled to recover "direct and indirect damages suffered as a result of [the department's] negligence." According to plaintiffs, "[t]he harms suffered by [plaintiffs]—including what [the department]

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

euphemistically terms 'compliance costs'—are squarely within the sort of direct and indirect damages allowed in tort," citing *Champs Convenience Store, Inc. v. United Chem. Co.*, 329 N.C. 446, 463 (1991), including tort claims brought under the State Tort Claims Act, citing *Phillips v. N.C. State Univ.*, 206 N.C. App. 258, 266–67 (2010). Plaintiffs contend that the damages that they seek to recover in this case represent "the natural and probable result of [the department's] actions against it," making the department "liable under the plain language of the [State] Tort Claims Act for the compensatory and consequential damages caused by its negligence." Plaintiffs dismiss the department's concerns about the "unprecedented and untenable" liability that will allegedly result from the Court of Appeals' decision by claiming that this argument fails to recognize that the State Tort Claims Act waives sovereign immunity for negligence claims, that recovery under the State Tort Claims Act is limited to $1,000,000 arising from a single occurrence, and that "the State's liability for its negligence has not yet been so enormous that the General Assembly has seen fit to revoke that waiver in the nearly 70 years the [State] Tort Claims Act has been in existence." On the contrary, plaintiffs argue, the General Assembly's recent decision to limit the availability of the public duty doctrine in proceedings brought pursuant to the State Tort Claims Act may reflect a legislative determination that "the risk of tort liability promotes better agency conduct and that the relatively rare

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

occurrence of actionable (and thus compensable) agency negligence is a 'price' well worth paying for improved agency accountability."

¶ 54        After carefully evaluating the parties' arguments, we hold that plaintiffs have failed to show that the department owed them a legally recognized duty sufficient to support a negligence claim under the State Tort Claims Act. According to well-established North Carolina law, "[t]o establish actionable negligence, [a] plaintiff must show that: (1) [the] defendant failed to exercise due care in the performance of *some legal duty owed to* [*the*] *plaintiff under the circumstances*; and (2) the negligent breach of such duty was the proximate cause of the injury." *Bolkhir*, 321 N.C. at 706 (emphasis added) (citing *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 232 (1984)); *accord Wood*, 355 N.C. at 166; *Mattingly v. N.C. R.R. Co.*, 253 N.C. 746, 750 (1961). "A duty is defined as an 'obligation, *recognized by the law*, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks.' " *Davis v. N.C. Dep't of Hum. Res.*, 121 N.C. App. 105, 112 (1995) (emphasis added) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 30, at 164–65 (5th ed. 1984)). The extent to which a particular defendant owes a duty to a particular plaintiff constitutes a question of law, subject to de novo review. *Connette v. Charlotte-Mecklenburg Hosp. Auth.*, 382 N.C. 57, 2022-NCSC-95, ¶ 7.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

¶ 55        In the affidavit that they filed with the Commission in this case, plaintiffs'

allegation that the department owed them a legally recognized duty of care consisted

of nothing more than the following:

> 245. [The department] owed Cedarbrook a duty of
> reasonable care in the exercise of its authority to
> investigate the facility and take licensure actions against
> it.
>
> . . . .
>
> 249. [The department] owed Mr. Leonard, as President and
> owner of Cedarbrook, a duty of reasonable care in the
> exercise of its authority to investigate the facility and take
> licensure actions against it.

The allegations that plaintiffs have advanced in support of their contention that the

department owned them a duty of care sufficient to support a negligence claim are

completely conclusory in nature. *See Sutton v. Duke*, 277 N.C. 94, 95 (1970) (noting

that, for purposes of evaluating the validity of a motion to dismiss, "the well-pleaded

material allegations of the complaint are taken as admitted," but "conclusions of law

or unwarranted deductions of fact are not admitted"). Despite the fact that plaintiffs

have failed to allege any facts or to cite any legal authority in support of their

contention that the department owed them a legally recognized duty of care, the

Court of Appeals appears to have failed to consider the extent, if any, to which such

a duty of care existed, having determined, instead, that the issue of whether the

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

department owed a legally recognized duty to plaintiffs was "intertwined with its interpretation of the public duty doctrine."[11]  *Cedarbrook*, ¶ 25.

A careful review of the decisions upon which plaintiffs rely in support of their contention that the department owed them a duty of care sufficient to support their "negligent regulation" claim shows that each of those cases clearly indicate that the relevant duty of care runs to the person or persons whom the agency's regulatory actions were intended to protect rather than to the entity being regulated.  In *Multiple Claimants*, for example, the estates of several inmates who died in a fire at the Mitchell County jail filed suit against the department under the State Tort Claims Act on the basis of allegations that a departmental employee had negligently failed to inspect the fire safety equipment utilized in the jail.  361 N.C. at 373.  The duty of care upon which this Court relied in allowing the plaintiff's claim to proceed was not to the jail or the county that operated it, but rather to the prisoners whom such fire safety regulations were designed to protect.[12]  *Id*. at 379; *see also Gammons*, 344 N.C. at 63 (concluding that the department, by means of its relationship with the

---

[11] As we explain in greater detail below, the duty of care component of a negligence claim is legally and conceptually distinct from the affirmative defense of the public duty doctrine, with the Court of Appeals having erred to the extent that it reached a contrary conclusion.

[12] The primary issue in *Multiple Claimants* was whether the "special relationship" exception to the public duty doctrine applied in that case, 361 N.C. at 372–73, with the Court concluding that the plaintiffs had "properly alleged facts that establish the existence of a special relationship between [the department] and the inmates" so as to preclude the department from relying upon the public duty doctrine as a defense to the claims that had been asserted against it, *id*. at 379.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

Cleveland County Director of Social Services, owed a duty to the residents of Cleveland County to respond to reports of child abuse and could be held liable for negligence in the event that it failed to do so); *Tang*, ¶ 28 (holding that the department had breached its duty of care to the residents of a senior care facility with a history of violations when the department failed to address certain deficiencies in external door security and resident supervision); *Haas*, 98 N.C. App. at 682–83 (concluding that the Department of Human Resources and the Department of Natural Resources and Community Development could be held liable to residents living near a county-operated incinerator as the result of their allegedly negligent exercise of "permitting, supervision, inspection and monitoring authority" that resulted in the emission of harmful and noxious gasses from the incinerator); *Zimmer*, 87 N.C. App. at 135 (holding that the fact that decisions made by employees of the Department of Transportation regarding the selection, design, and maintenance of detour routes associated with a highway construction project were "discretionary governmental functions" did not preclude a finding that the department was liable under the State Tort Claims Act for injuries sustained by a truck driver who had been injured in an accident that allegedly resulted from a negligently designed detour route). Simply put, neither this Court nor the Court of Appeals has ever found that a state agency owed a duty of care sufficient to support a claim sounding in negligence to an entity that was subject to the agency's discretionary regulatory authority (e.g.,

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

the jail operator in *Multiple Claimants*, the senior living center in *Tang*, or the waste disposal facility in *Haas*). This distinction is critical given that "the duty owed by each defendant to [a] plaintiff is determined by the relationship subsisting between them." *Kientz v. Carlton*, 245 N.C. 236, 240 (1957).[13]

¶ 57 Similarly, plaintiffs' argument that the statutory scheme applicable to adult care facilities imposes a duty on the department that runs to the facilities themselves lacks merit. A careful analysis of the statutory provisions upon which plaintiffs rely in support of this argument indicates that those provisions are intended to protect the *residents* of adult care facilities rather than the facility owners or operators. For example, the various provisions governing training and licensing requirements for individuals working in adult care homes, *see* N.C.G.S. §§ 131D-2.2; 131D-2.15; 131D-

---

[13] The distinction discussed in the text of this opinion also explains why claims like those at issue in *Gammons* and *Tang* were not foreclosed by the "private person" provision contained in N.C.G.S. § 143-291(a), with the negligence claims at issue in those cases having been premised upon an alleged failure on the part of the department to fulfill a duty to the plaintiff that was imposed by statute. *See Gammons*, 344 N.C. at 63 (finding the department liable on the basis of a *respondeat superior* theory stemming from a failure on the part of a county social services director to fulfill his statutory obligation to protect minor children from physical abuse); *Tang*, ¶ 16 (affirming a finding by the Commission that the department had breached its statutory duty to an adult care home resident by failing to properly inspect the facility in which the resident resided). According to well-established North Carolina law, private persons can be held liable for failing to comply with statutory duties. *See, e.g., Stikeleather Realty & Inv. Co. v. Broadway*, 242 N.C. App. 507, 517 (2015) (discussing the statutory duties owed to tenants by landlords under the Residential Rental Agreements Act, N.C.G.S. §§ 42-38 to -39, for the purpose of ensuring that residential premises are fit for human habitation); *Mozingo v. Pitt Cnty. Mem'l Hosp., Inc.*, 101 N.C. App. 578, 585 (1991) (noting that, when a patient procures the medical services of a physician, "a duty arises requiring the physician to conform to the statutory standard of care"). Plaintiffs have failed to identify any statutory duty that they were owed by the department.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

4.5B, 131D-40; 131D-45, are intended to protect the *residents* of those facilities, with none of these statutory provisions containing any support for the notion that they are intended to protect adult care facility owners or operators as well. Instead, the General Assembly has clearly indicated that the purpose underlying the statutory scheme for regulating adult care homes is "to promote the interests and well-being of the *residents* in adult care homes and assisted living residences" licensed by the department. N.C.G.S. § 131D-19 (emphasis added).[14]

¶ 58 Although plaintiff has argued that the Court of Appeals' decision in *Watts* supports a determination that an agency can be held liable for the "negligent exercise of regulatory authority against the regulated party," we do not find this argument to be persuasive. In *Watts*, the plaintiff filed an affidavit with the Commission in which it alleged that an agent of the North Carolina Department of Environment and Natural Resources had negligently inspected and issued an improvement permit for a parcel of land that was subsequently deemed to be unsuitable for the plaintiff's house construction plans. 182 N.C. App. at 180. Although the Department of Environmental and Natural Resources sought dismissal of the plaintiff's claim on the basis of the public duty doctrine, the Court of Appeals held that the plaintiff's claim

---

[14] Additional support for our conclusion that the statutory scheme governing adult care homes is intended to protect residents and not the facilities in which they live can be found in the fact that residents, or the department acting on their behalf, may institute a civil action against an adult care home to enforce the provisions of the Adult Care Home Residents' Bill of Rights. *See* N.C.G.S. § 131D-28.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

was entitled to proceed under the "special duty exception" given that the employee who had performed the inspection had "made a promise to [the] plaintiff by issuing the improvement permit warranting that [the] plaintiff could construct a three-bedroom home on the property as described in the site plan," that the plaintiff had "relied on the permit in negotiating the purchase of the property," and that the Department of Environment and Natural Resources had subsequently revoked the permit, "causing [the] plaintiff to incur additional expenses in order to use the lot as he had planned." *Id*. at 180–84. As a result, the Court of Appeals affirmed the Commission's decision to award compensatory damages to the plaintiff. *Id*. at 189.

¶ 59 We are not persuaded that *Watts* has any bearing upon the proper resolution of the issues that are before us in this case. Aside from the fact that the specific issue that was before the Court of Appeals in *Watts* was the availability of the public duty doctrine as an affirmative defense to the claims that plaintiff had asserted rather than whether the Department of Environment and Natural Resources owed a legally recognized duty to the plaintiff, the claim at issue in *Watts* bears no resemblance to the "negligent regulation" claim that plaintiffs have asserted in this case, which rests upon a contention that a regulated entity is entitled to assert a negligence claim against a state agency responsible for enforcing a complex regulatory scheme created by statute. As a result, nothing in *Watts* supports the sweeping conclusion that a

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

regulatory agency owes a duty of care sufficient to support a negligence claim in favor of the entities that are subject to its regulation.[15]

¶ 60 The other decisions upon which plaintiffs rely are equally irrelevant to the proper resolution of the issue that is before us in this case. *See Crump*, 216 N.C. App. at 42 (recognizing the validity of a claim that had been asserted against the Department of Environmental and Natural Resources by property owners who alleged that the agency had negligently issued a permit authorizing the construction of a septic system upon property that was not suitable for the installation of such a system); *Russell*, 227 N.C. App. at 309 (same); *Strickland*, 213 N.C. App. at 511 (recognizing the validity of a wrongful death claim that had been asserted against the University of North Carolina at Wilmington based upon an allegation that university police officers had "negligently provided false, misleading, and irrelevant information" to the New Hanover County Sheriff's Office in connection with the service of an arrest warrant upon the decedent, whom the officers accidentally killed during the execution of the arrest warrant); *Husketh*, 2010 WL 157557, at *1 (upholding a claim asserted by inmate against the Department of Correction on the

---

[15] Although plaintiffs point out that this Court affirmed the Court of Appeals decision in *Watts*, our per curiam opinion clearly indicates that our decision rested upon the Commission's finding that the Department of Environment and Natural Resources had admitted that it had negligently issued the relevant permit, so as to have "effectively waived its argument that it owe[d] no duty to [the] plaintiff under the public duty doctrine." *Watts*, 362 N.C. at 498. For that reason, we "express[ed] no opinion [concerning the validity of] the analysis of the public duty doctrine by the Court of Appeals." *Id.*

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

grounds that its employees had been "negligent in failing to apply the appropriate sentencing statutes for his convictions").[16] As with *Multiple Claimants* and other cases previously discussed, these cases all involved plaintiffs whose interests the relevant regulatory regimes were designed to protect, rather regulated entities impacted by the kind of complex, discretionary administrative decisions that are at issue in this case.

¶ 61 Finally, we conclude that the public policy concerns raised by Judge Tyson and the department, while by no means dispositive, counsel against a holding that regulated entities are entitled to sue the agencies responsible for exercising discretionary regulatory authority over those entities under the State Tort Claims Act unless we are clearly required to do so. As Judge Tyson observed, upholding the Court of Appeals' decision in this case would subject those agencies to the risk of liability for both overly aggressive and insufficiently aggressive exercise of their regulatory authority, *see Cedarbrook*, ¶ 66 (Tyson, J., dissenting).[17] The creation of

---

[16] The only case in North Carolina that we have found that tends to suggest that the department owes a legal duty to the entities that it regulates is *Nanny's Korner*, which, as we have already explained, is neither persuasive nor binding upon this Court.

[17] The facts at issue in *Multiple Claimants* serve to illustrate the conundrum that would be created for regulatory agencies under the approach advocated for by plaintiffs. In the event that we were to accept the validity of the position that plaintiffs have espoused in this case, Mitchell County would have been entitled to maintain an action against the department under the State Tort Claims Act in the event that the department had conducted a proper inspection of the jail, detected the problems with the fire safety equipment that led to the fire that occurred at that facility, and ordered the County to address those deficiencies in a manner that the County believed to be "unreasonable." We decline to interpret the State Tort Claims Act in such a way as to discourage state regulatory agencies from carrying out

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

such conflicting duties of care is inherently problematic, *see Koch v. Bell, Lewis & Assocs.*, 176 N.C. App. 736, 740 (2006) (declining to recognize the existence of a duty between an insurance adjuster and a claimant on the grounds that the recognition of such a duty would "subject the adjuster to conflicting loyalties" given that the adjustor "owes a duty to the insurer who engaged him," so that the creation of "[a] new duty [to the claimant] would conflict with that duty, and interfere with its faithful performance" (quoting *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 72 Cal. App. 4th 249, 253 (1999))), and it is particularly troublesome in situations like this one, in which the principal concern motivating the creation of the relevant regulatory regime was the protection of the residents of adult care homes rather than the entities that own and operate them.

¶ 62 Admittedly, it is theoretically possible to find a middle ground between too much regulation and no regulation at all. However, this middle ground is one that the General Assembly, rather than the judicial branch, should be responsible for identifying. *See Mann Media, Inc. v. Randolph Cnty. Plan. Bd.*, 356 N.C. 1, 16 (2002) (noting that, under the Administrative Procedure Act, a court reviewing an agency

---

their legislatively ordained functions in an effective manner. *See State v. Jones*, 359 N.C. 832, 837 (2005) (observing that, "[i]n construing statutes[,] courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results," (quoting *State ex rel. Comm'r of Ins. v. N.C. Auto Rate Admin. Office*, 294 N.C. 60, 68 (1978))).

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

decision "does not have authority to override decisions within agency discretion when that discretion is exercised in good faith and in accordance with law" (quoting *Lewis v. N.C. Dep't of Hum. Res.*, 92 N.C. App. 737, 740 (1989))). In this instance, at least, we believe that tort law principles are ill-suited to the identification of the proper scope of regulatory activity. *See Myers*, 360 N.C. at 468 (holding that, when the General Assembly "has vested [a state agency] with broad powers to protect the health and well-being of the general public," the discretionary decisions that it is required to make in exercising that authority "are not generally the type of decisions for which the State is liable to private citizens in tort"); *see also United States v. Varig Airlines*, 467 U.S. 797, 820 (1984) (holding that "[j]udicial intervention in [discretionary] decisionmaking through private tort suits would require the courts to 'second-guess' the political, social, and economic judgments of an agency exercising its regulatory function"). In reaching this conclusion, we note that the exercise of regulatory authority by state agencies generally requires a level of expertise and the exercise of some amount of discretion that is difficult to evaluate using the "reasonable person" standard. *See Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 473 (2002) (noting that, to prevail in a negligence action, a plaintiff must show that the defendant owed the plaintiff a legal duty and "fail[ed] to exercise the degree of care that a reasonable and prudent person would exercise under similar conditions"). Although the courts have had extensive experience applying the "reasonable person"

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

standard in establishing liability for injuries sustained in automobile accidents and other areas subject to traditional tort-based liability, in which the manner in which the "reasonable person" standard should be applied is well-established, *see, e.g., Hobbs v. Queen City Coach Co.*, 225 N.C 323, 331 (1945) (holding that, in the exercise of ordinary care, "it is incumbent upon the operator of a motor vehicle to keep [the] same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway"), we are not aware of any precedent that could guide the Commission in determining how a "reasonable regulator" would have exercised its discretionary authority in dealing with investigations like those conducted at Cedarbrook.[18]

¶ 63        More importantly, however, the General Assembly has created a system for the specific purpose of resolving disputes over the validity of regulatory actions by state agencies like the department.  In 1985, the General Assembly established the Office of Administrative Hearings

> to ensure that administrative decisions are made in a fair
> and impartial manner to protect the due process rights of
> citizens who challenge administrative action and to provide

---

[18] In addition, the State Tort Claims Act requires the Commission to determine if the plaintiff had been contributorily negligent, N.C.G.S. § 143-291(a), with such a determination being subject to the "the same rules as those applicable to litigation between private individuals," *Medley v. N.C. Dep't of Corr.*, 330 N.C. 837, 840–41 (1992) (quoting *Barney*, 282 N.C. at 284). It is not at all clear to us how the Commission would evaluate the existence of contributory negligence, which prohibits recovery where "the plaintiff's own negligence contributed to his injury," *Draughon v. Evening Star Holiness Church of Dunn*, 374 N.C. 479, 483 (2020), under circumstances in which the plaintiff's own conduct prompts the regulatory actions that are the alleged cause of the plaintiff's injury.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

> a source of independent administrative law judges to
> conduct administrative hearings in contested cases in
> accordance with Chapter 150B of the General Statutes and
> thereby prevent the commingling of legislative, executive,
> and judicial functions in the administrative process.

N.C.G.S. § 7A-750; *see also Empire Power*, 337 N.C. at 594–95 (holding that, unless otherwise provided by law, the Administrative Procedure Act controls the rights of any party "aggrieved by an agency decision," including the right to review of that decision by the Office of Administrative Hearings). As we have already explained, the Administrative Procedure Act provides a means by which adult care facilities can seek relief from the department's regulatory decisions. *See* N.C.G.S. §§ 131D-2.7(d)(4), -34(e).

A decision on the part of this Court to allow an "aggrieved party" to challenge those exact same decisions by both seeking relief pursuant to the Administrative Procedures Act and by filing a tort claim with the Commission would subvert the legislative framework that the General Assembly has created for such disputes. As this Court held more than forty years ago:

> [a]s a general rule, where the legislature has provided by
> statute an effective administrative remedy, that remedy is
> exclusive and its relief must be exhausted before recourse
> may be had to the courts. This is especially true where a
> statute establishes, as here, a procedure whereby matters
> of regulation and control are first addressed by
> commissions or agencies particularly qualified for the
> purpose. In such a case, the legislature has expressed an
> intention to give the administrative entity most concerned
> with a particular matter the first chance to discover and

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

rectify error. Only after the appropriate agency has developed its own record and factual background upon which its decision must rest should the courts be available to review the sufficiency of its process. An earlier intercession may be both wasteful and unwarranted. To permit the interruption and cessation of proceedings before a commission by untimely and premature intervention by the courts would completely destroy the efficiency, effectiveness, and purpose of the administrative agencies.

*Presnell v. Pell*, 298 N.C. 715, 721–22 (1979) (cleaned up). It seems incongruous to us to allow plaintiffs, who challenged the validity of the department's regulatory decisions by seeking administrative relief from the Office of Administrative Hearings before reaching a settlement with the department that involved the withdrawal of the allegations that the department had made against plaintiffs, to have another bite at the proverbial apple by asserting a damage claim before the Commission under the State Tort Claims Act.[19]

¶ 65 After claiming that "[t]he remedies afforded under the Administrative Procedure[s] Act and the [State] Tort Claims Act are not mutually exclusive" and

---

[19] We do not wish to be understood as in any way faulting plaintiffs for their decision to reach a settlement with the department or to suggest that their decision to do so, standing alone, precluded them from seeking monetary relief from the department under the State Tort Claims Act, particularly given that "[t]he law favors the settlement of controversies out of court." *Penn Dixie Lines, Inc. v. Grannick*, 238 N.C. 552, 555 (1953); *see also* N.C.G.S. § 150B-22(a) (providing that it is state policy that, as an initial matter, "any dispute between an agency and another person that involves the person's rights, duties, or privileges, including licensing or the levy of a monetary penalty, should be settled through informal procedures"). Instead, we simply hold that the remedy available to a party aggrieved by a regulatory decision made by a state agency is the one provided for under the Administrative Procedure Act or some similar statutory scheme.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

noting that the Administrative Procedure Act does not permit an award of compensatory damages, plaintiffs argue that, unless they are also permitted to assert a damage claim against the department pursuant to the State Tort Claims Act, they will have been deprived of an adequate remedy for the department's allegedly unlawful action. We do not find this argument persuasive.

¶ 66    According to the Administrative Procedure Act, if an administrative law judge finds that a regulatory action taken by a state agency has "substantially prejudiced the petitioner's rights" and the state agency "has acted arbitrarily or capriciously," the judge may order the agency to pay the petitioner's attorney's fees. N.C.G.S. § 150B-33(b)(11). In addition, when a petitioner seeks judicial review of the administrative law judge's decision in a contested case, the petitioner is entitled to recover attorney's fees if the reviewing court determines that "the agency acted without substantial justification in pressing its claim against the [petitioner]" and that "there are no special circumstances that would make the award of attorney's fees unjust." N.C.G.S. § 6-19.1(a); *c.f., Crowell Constructors, Inc. v. State ex rel. Cobey*, 342 N.C. 838, 844 (1996) (holding that, to avoid having to pay attorney's fees to the petitioner, the agency need only demonstrate that its actions were "rational and legitimate to such degree that a reasonable person *could* find it satisfactory or justifiable in light of the circumstances then known to the agency"). Thus, it appears to us that the General Assembly has concluded, in the exercise of its legislative

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

authority, that the monetary relief available in the event of a successful challenge to the lawfulness of a regulatory decision made by a state agency is limited to the recovery of attorney's fees and that, in the event that the General Assembly had intended to make additional monetary relief available to a party that had successfully challenged the lawfulness of such a regulatory decision, it would have said so in more explicit terms. *See Cabarrus Cnty. Bd. of Educ. v. Dep't of State Treasurer*, 374 N.C. 3, 14 (2020) (noting that the existence of proposed legislation addressing the subject of the case that was before the Court "shows that, in the event that the General Assembly wished to exempt the process of establishing a cap factor [for state employee retirement benefits] from the rulemaking provisions of the Administrative Procedure Act, it knows how to do so"). As a result of this set of circumstances and the General Assembly's clear authority to determine the nature and extent of any non-constitutional remedies for unlawful actions by state agencies, we decline to infer the existence of a right to recover compensatory damages under the State Tort Claims Act arising from allegedly unlawful regulatory actions in the absence of explicit legislative authorization for such an award.[20]

---

[20] Amici North Carolina Senior Living Association and North Carolina Assisted Living Association cite *Ivey v. North Carolina Prison Department*, 252 N.C. 615 (1960), and *Amos v. Oakdale Knitting Co.*, 331 N.C. 348 (1992), to argue that interpreting the "statutory silence" concerning the availability of compensatory damages for wrongful administrative actions under Chapter 131D to foreclose the availability of such relief would be contrary "to [the] North Carolina courts' approach to statutory silence on exclusive and alternative remedies." The issue in *Ivey* was whether the 1957 amendments to the Workers' Compensation Act had eliminated the right that this Court had previously recognized for a prison inmate to recover

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

¶ 67    Finally, our reluctance to endorse a claim for "negligent regulation" is reinforced by a concern that, if we were to recognize the existence of such a claim, the total dollar value of the tort liability obligations that the State would incur would be increased and the workload of the Commission under the State Tort Claims Act would, in all probability, be substantially affected as well.  Even if most of those claims were ultimately determined to be meritless, so that the amount of money paid out in compensatory damages was not large, the resulting expenditure of time and resources by the State would likely be significant.  We are not inclined to believe that the General Assembly intended to authorize such an imposition upon the public fisc and the State's non-monetary resources in the absence of some clear indication that it intended to act in that fashion.  *See Corum v. Univ. of North Carolina*, 330 N.C. 761, 785 (1992) (observing that the modern doctrine of sovereign immunity "seems to

damages under the State Tort Claims Act relating to injuries sustained as the result of the negligence of a State employee, with this Court opining that, "[i]f the Legislature intended to withdraw a prisoner's right to pursue a tort claim, the logical procedure would be by amendment to the section of the [State] Tort Claims Act which gives that right." *Ivey*, 252 N.C. at 617–19.  The issue in *Amos* was whether the existence of a statutory remedy under the North Carolina Wage and Hour Act precluded the plaintiff from asserting a common law wrongful discharge claim against the employer, with this Court noting that, when "determining whether the state legislature intended to preclude *common law actions*, we first look to the words of the statute to see if the legislature expressly precluded *common law remedies*." 331 N.C. at 358 (emphasis added).  Nothing in *Ivey* or *Amos* suggests that the General Assembly's failure to provide a *statutory* right to compensatory damages under the Administrative Procedure Act indicates that they intended such damages to be available under the State Tort Claims Act, particularly given that such a determination would result in a more expansive waiver of the State's sovereign immunity than this Court has previously recognized.  *See Stone*, 347 N.C. at 479 (noting that statutes "that permit suit in derogation of sovereign immunity should be strictly construed").

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

rest on a respect for the positions of two coequal branches of government—the legislature and the judiciary," and, therefore, "courts have deferred to the legislature the determination of those instances in which the sovereign waives its traditional immunity").

¶ 68    In light of our determination that the department did not owe a legal duty to plaintiffs in light of the circumstances that are before us in this case, we need not address the parties' arguments regarding breach and damages. *See Stone*, 347 N.C. at 482 (noting that, "[a]bsent a duty, there can be no liability"). Nothing in the applicable statutory provisions or prior caselaw recognizes the validity of a claim like the one that plaintiffs have asserted in this case, and we hold that no such claim exists. As a result, for all these reasons, we reverse the decision of the Court of Appeals and remand this case to the Court of Appeals for further remand to the Commission with instructions that plaintiffs' claims against the department be dismissed.

**D. Public Duty Doctrine**

¶ 69    Finally, the department argues that plaintiffs' claims are barred by the public duty doctrine "because [the department] owes a duty to the public, not adult care home owners or operators." As a result of our determination that plaintiffs' claims are barred by the doctrine of sovereign immunity and that plaintiffs have failed to identify a legal duty that the department owed to them sufficient to support a claim

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

for damages pursuant to the State Tort Claims Act, we need not address the extent, if any, to which the public duty doctrine serves as a barrier to the claims that plaintiffs have advanced in this case. On the other hand, we do believe that we need to clarify the relationship between the public duty doctrine and the duty element of a negligence claim to make it clear that the existence of a legal duty running from a state agency to a tort claimant does not turn on whether the public duty doctrine applies in a given case.

¶ 70        The public duty doctrine "provides that governmental entities and their agents owe duties only to the general public, not to individuals, absent a 'special relationship' or 'special duty' between the entity and the injured party." *Stone*, 347 N.C. at 477–78. (citing *Braswell v. Braswell*, 330 N.C. 363, 370–71 (1991)). The public duty doctrine was designed "to prevent an overwhelming burden of liability on governmental agencies with limited resources," *id.* at 481 (cleaned up), by making it clear that a "governmental entity is not liable for negligence for failure to carry out statutory duties," *Isenhour v. Hutto*, 350 N.C. 601, 606–07 (1999). As a general proposition, the public duty doctrine has been deemed applicable in situations involving allegations arising from "the governmental entity's negligent control of an external injurious force or of the effects of such force." *Strickland*, 213 N.C. App. at 512. *See e.g., Myers*, 360 N.C. at 461–62 (allegations that the Department of Environment and Natural Resources had acted negligently in attempting to control

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

a forest fire that caused injury to the plaintiffs); *Wood*, 355 N.C. at 163 (allegations that Guilford County had negligently failed to provide adequate security at the county courthouse where the plaintiff had been assaulted by a third party); *Stone*, 347 N.C. at 476–77 (allegations that the Department of Labor had negligently failed to inspect a factory prior to a fire in which multiple workers were killed or injured); *Hunt*, 348 N.C. at 194–95 (allegations that the Department of Labor had negligently inspected an amusement park ride that later malfunctioned, resulting in injury to the plaintiff); *Braswell*, 330 N.C. at 366–67 (allegations that a county sheriff had negligently failed to protect the claimant's mother and to properly supervise the deputy sheriff who murdered her).

¶ 71      In *Stone*, we held that the common law public duty doctrine applied to claims brought against the State under the State Tort Claims Act. 347 N.C. at 482. In 2008, however, the General Assembly amended the State Tort Claims Act to formally codify the public duty doctrine in the tort claims act context and to limit its application to the following types of claims:

> (1) The alleged negligent failure to protect the claimant from the action of others or from an act of God by a law enforcement officer as defined in subsection (d) of this section.
>
> (2) The alleged negligent failure of an officer, employee, involuntary servant or agent of the State to perform a health or safety inspection required by statute.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

N.C.G.S. § 143-299.1A(a).  As we later recognized in *Ray*, while the General Assembly had "incoporat[ed] much of our public duty doctrine case law into the [State Tort Claims Act]," it had "also made clear that the doctrine is to be a more limited one than the common law might have led us to understand."  366 N.C. at 7.

The Court of Appeals in this case held that, because the department's allegedly negligent conduct did not fit within the contours of one of the exceptions enumerated in N.C.G.S. § 143-299.1A(a), the public duty doctrine had no application to the facts of this case.  *Cedarbrook*, ¶ 23.  In addition, the Court of Appeals rejected the department's argument that plaintiffs had failed to identify a legal duty running from the department to plaintiffs sufficient to support a negligence claim on the grounds that the argument to this effect was "intertwined with [the department's] interpretation of the public duty doctrine."  *Id*. ¶ 24.  The Court of Appeals erred to the extent that it equated the nature and extent of the public duty doctrine as applied in proceedings conducted pursuant to the State Tort Claims Act with the nature and extent of the legal duty that is necessary to support a negligence claim.

Unlike the duty of care, which is an *element* of any negligence claim that a plaintiff must establish regardless of whether the claim is against a state agency under the State Tort Claims Act or a private party under the common law, *see Stone*, 347 N.C. at 479, the public duty doctrine is an *affirmative defense* to an otherwise valid negligence claim against the State, *see Ray*, 366 N.C. at 8; *see also Myers*, 360

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

N.C. at 465 (describing the public duty doctrine as "a separate rule of common law negligence that may limit tort liability, even when the State has waived sovereign immunity"). For that reason, while the public duty doctrine protects governmental entities from liability based upon a failure to carry out a statutorily created duty that is designed to protect the public at large rather than a specific individual, *Isenhour*, 350 N.C. at 606–07, and "operates to prevent plaintiffs from establishing the first element of a negligence claim—duty to the individual plaintiff," *Ray*, 366 N.C. at 5, the mere fact that the doctrine does not apply with respect to a particular set of facts does not, without more, determine whether the duty of care necessary to support the assertion of a negligence claim exists in the first place. Although the two legal doctrines are related, they are not identical, and the absence of one does not prove the existence of the other.

¶ 74       Assuming, without in any way deciding, that the Court of Appeals correctly determined that the 2008 amendments to the State Tort Claims Act precluded the department from successfully asserting the public duty doctrine in this case, that determination does not automatically establish that the department owed a duty of care to plaintiffs sufficient to support a negligence claim against the department under the State Tort Claims Act. Instead, plaintiffs were still required to identify a recognized legal duty owed to them by the department, *see Pinnix v. Toomey*, 242 N.C. 358, 362 (1955) (observing that "[a]ctionable negligence presupposes the existence of

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Opinion of the Court*

a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law"), with the Court of Appeals having erred by concluding that the inapplicability of the public duty doctrine sufficed to establish that the department owed plaintiffs a legal duty supporting a negligence claim against the department under the State Tort Claims Act.

### III.    Conclusion

Thus, for the reasons set forth above, we hold that the Commission erred in failing to dismiss plaintiffs' claims given that plaintiffs' claims are barred by sovereign immunity and that plaintiffs failed to assert a viable negligence claim against the department.  As a result, we reverse the decision of the Court of Appeals and remand this case to the Court of Appeals for further remand to the Commission for additional proceedings not inconsistent with this opinion.

REVERSED.

Justice EARLS concurring in the result only.

Although I concur that "plaintiffs failed to assert a viable negligence claim against the department," I arrive at that result in this case for a fundamentally different reason from my colleagues. In my view, the many allegations of the complaint in this matter all involve intentional, not negligent, acts. Thus, rather than engage in the judicial nullification of statutory rights by invoking an all-encompassing sovereign immunity for regulatory agencies, this case is most appropriately resolved by the normal function a court should perform in ruling on a motion to dismiss. The court should examine the allegations of the complaint to determine if they state a cause of action for negligence. *Deminski v. State Bd. of Educ.*, 377 N.C. 406, 2021-NCSC-58, ¶ 12.

Plaintiffs have a cause of action under the State Tort Claims Act (STCA) to sue "departments, institutions and agencies of the State" when the claim "arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority." N.C.G.S. § 143-291(a) (2021). However, in this case, the conduct of the Department of Health and Human Services (DHHS) employees that caused plaintiffs' alleged injury was intentional conduct and thus does not meet the standard required for negligence claims. *See Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709 (1988) ("To establish actionable negligence, plaintiff must show that: (1) defendant failed to

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Earls, J., concurring in result only*

exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury.").

¶ 78     The "overall goal" of the STCA was to "give greater access to the courts to plaintiffs . . . [that] were injured by the State's negligence." *Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 11 (2012). This Court previously has held that the STCA applies to cases involving state agencies. For example, we have held that the STCA applies to actions taken by an employee of the State Ports Authority, the North Carolina Department of Environment and Natural Resources, the Department of Labor, the Department of Transportation and the Department of Health and Human Services. *See Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 537 (1983) (determining the Industrial Commission had jurisdiction because the STCA applied to negligent actions taken by an employee of the State Ports Authority); *Myers v. McGrady*, 360 N.C. 460, 467 (2006) ("We hold that the public duty doctrine applies to negligence claims filed under the [STCA] against [the North Carolina Department of Environment and Natural Resources] for alleged mismanagement of forest fires."); *Stone v. N.C. Dep't of Lab.*, 347 N.C. 473, 481–83 (1998) (determining the public duty doctrine applies to cases under the STCA and applying it to a case involving negligence by the Department of Labor for not inspecting a food plant); *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 331, 333 (1982) (determining that the trial court

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Earls, J., concurring in result only*

did not err by denying motions to dismiss a complaint on grounds that Department of Transportation was immune under the doctrine of sovereign immunity and determining the STCA applies to third-party complaints); *Multiple Claimants v. N.C. Dep't of Health & Hum. Servs.*, 361 N.C. 372, 379 (2007) (determining the public duty doctrine did not apply to a claim arising under the STCA against DHHS for the death of four inmates following a fire at a county jail).

¶ 79        However, to bring a claim under the STCA, a party must prove the standard elements of negligence, which include duty, breach, causation, and damages. *Bolkhir*, 321 N.C. at 709 ("Under the [STCA], negligence is determined by the same rules as those applicable to private parties."). "The [STCA] does not give [courts] jurisdiction to award damages based on intentional acts." *Frazier v. Murray*, 135 N.C. App. 43, 48 (1999) (citing *Jenkins v. Dep't of Motor Vehicles*, 244 N.C. 560 (1956)). Intentional acts are also legally distinguishable from negligent acts. *Id.*

¶ 80        Our Court has not decided a case involving intentional actions taken by regulatory agencies, but the Court of Appeals has done so twice. In *Williams v. North Carolina Department of Justice, Criminal Standards Division*, 273 N.C. App. 209, 212 (2020), the Court of Appeals held that the CEO of a company providing traffic control services that was subjected to regulatory action could not bring a claim against the agency. There, the court expressed that it was "well-settled" that the STCA does not permit recovery for intentional acts like the alleged regulatory action

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Earls, J., concurring in result only*

at issue in that case. *Id.* (quoting *Fennell v. N.C. Dep't of Crime Control & Pub. Safety*, 145 N.C. App. 584, 592 (2001)). Similarly, in *Frazier*, 135 N.C. App. 43, the Disciplinary Hearing Commission of the North Carolina State Bar pursued criminal contempt charges against a disbarred attorney who continued to practice law in violation of multiple orders. *Id.* at 45. The attorney was imprisoned and filed a tort claim against the Commission and its members for false imprisonment and intentional infliction of emotional distress. *Id.* at 46. There, the Court of Appeals concluded that "[i]njuries intentionally inflicted by employees of a state agency are not compensable under the [STCA]." *Id.* at 48. Both *Williams* and *Frazier* are instructive in determining the case at bar.

¶ 81        DHHS's regulatory acts are analogous to those in *Williams* and *Frazier* because they involved intentional regulatory acts. These actions are not accidents, inadvertent, unintended, or the result of a failure to use reasonable care. *See Yancey v. Lea*, 354 N.C. 48, 53 (2001) ("Negligence, a failure to use due care, *be it slight or extreme*, connotes inadvertence." (quoting *Hinson v. Dawson*, 244 N.C. 23, 28 (1956))). Rather, they were actions taken intentionally by a state agency to enforce laws passed by the General Assembly under N.C.G.S. §§ 131D-21 (providing residents' rights), 131D-34 (providing administrative penalties), 131D-2.7 (providing for suspension of admission). DHHS acted intentionally in determining Cedarbrook's violations under N.C.G.S. § 131D-21. When it classified those violations and determined what

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Earls, J., concurring in result only*

penalties should apply it acted pursuant to N.C.G.S. § 131D-34. And when DHHS subsequently suspended admissions at Cedarbrook, it acted intentionally pursuant to N.C.G.S. § 131D-2.7. In carrying out these regulatory actions, DHHS acted intentionally and cannot be held liable under a theory of negligence or the STCA. *See Williams*, 273 N.C. App. at 213–15; *Frazier*, 135 N.C. App. at 46. Thus, I agree with the majority that Cedarbrook has failed to assert a viable claim for negligence.

¶ 82     It is unnecessary to reach the many other issues raised by the parties. Indeed, it is beyond the scope of this case to opine on the question of whether state employees engaged in regulatory actions are subject to the STCA for their negligence because in this case, the acts that allegedly caused plaintiffs' injuries were intentional acts. It is also unnecessary to interpret the "private person" language of the STCA or overrule any portion of the *Nanny's Korner* decision. *See Nanny's Korner Day Care Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 264 N.C. App. 71 (2019). Therefore, I do not join in any portion of the majority opinion in this matter and join in the result only, reversing the decision of the Court of Appeals and remanding for dismissal of plaintiffs' affidavit for failure to assert a claim of negligence against DHHS.

Chief Justice NEWBY dissenting.

¶ 83     What is the remedy when a state actor negligently regulates a business causing significant operational and financial disruption or the business's closure? Potential remedies include three approaches: (1) a constitutional tort under article I, section 1 of the North Carolina Constitution (fruits of their own labor)[1]; (2) an action for negligence under the State Tort Claims Act (STCA); or (3) an administrative review under the Administrative Procedure Act (APA). The majority's decision removes the STCA as a potential option. Specifically, here we consider whether a state-regulated entity may bring a negligence claim against its state regulator under the STCA or whether the entity is limited to an administrative remedy under the APA and/or a constitutional tort claim. Because the STCA provides a limited waiver of the state's sovereign immunity, this Court has previously allowed regulated claimants to bring certain negligence claims challenging the state's regulatory activities under the STCA. Further, since state regulators are granted broad

---

[1] We also recognize that a regulatory taking under article I, section 19 (law of the land) is a potential remedy. Article I, section 19 of our state constitution provides that "[n]o person shall be . . . deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. As a result of the state's largely unchecked regulatory authority, the state's significant interference with a regulated entity could rise to the level of a constitutional taking. In the present case, counsel for the North Carolina Department of Health and Human Services (DHHS) did not have an answer at oral argument when asked at what point the state's regulatory actions constitute a taking. *See* Oral Argument at 1:01:42, Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs. (No. 36A22), https://www.youtube.com/watch?v=5CThlVBanJY.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

regulatory authority, it is appropriate to require regulators to conduct investigations and use their authority in a non-negligent manner. As such, state regulators owe a duty of care to both the regulated entities subject to their authority and to the individuals whom the regulations are designed to protect. Additionally, the availability of an administrative remedy under the APA does not preclude a claimant from seeking a more adequate remedy under the STCA. Accordingly, the decision of the Court of Appeals should be affirmed. I respectfully dissent.

¶ 84        Plaintiff Cedarbrook Residential Center, Inc. (Cedarbrook) is a licensed adult care home in Nebo, North Carolina, that serves residents with disabilities and mental illnesses. Cedarbrook is owned by plaintiff Fred Leonard.[2] Defendant North Carolina Department of Health and Human Services, Division of Health Service Regulation, Adult Care Licensure Section (DHHS) is the state agency charged with licensing, inspecting, and enforcing the provisions that govern adult care homes such as Cedarbrook. Specifically relevant to this case, Cedarbrook serves a "challenging disabled population" and works to provide a "safe and stable environment" that is supportive of its residents' mental health challenges.

¶ 85        In November of 2015, DHHS conducted an extensive investigation of Cedarbrook and interviewed its residents and employees to ensure the facility was

---

[2] Plaintiffs Cedarbrook Residential Center and Fred Leonard are collectively referred to as "Cedarbrook."

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

operating in compliance with the governing regulations.[3] At the time of the investigation, Cedarbrook was a Four Star facility, the highest rating available under DHHS's rating system. Utilizing investigatory techniques inappropriate for the residents in plaintiffs' type of facility, DHHS, however, found numerous alleged violations and recorded its findings in "Statements of Deficiencies" (statements) that exceeded 400 pages. The statements largely consisted of copies of the surveyor notes from the investigations and interviews, rather than reasoned agency findings. The statements recorded deficiencies in supervision, staffing, and sanitation, among many other areas. Based on the identified deficiencies, DHHS issued financial penalties and suspended Cedarbrook from admitting new residents.

¶ 86      In May of 2016, DHHS granted Cedarbrook a provisional operating license, but DHHS later found that Cedarbrook failed to present acceptable plans to cure the deficiencies. Accordingly, DHHS issued a Directed Plan of Protection requiring Cedarbrook to implement increased staffing and administrative measures. As a result of DHHS's suspension order, provisional license, and regulatory actions, Cedarbrook's occupancy dropped more than 50%, the facility incurred additional costs

---

[3] The majority repeatedly discounts the relevance of the allegations asserted in plaintiffs' affidavit. With a motion to dismiss, however, we are to treat the factual allegations as true and view the facts in the light most favorable to the non-moving party. A brief review of the relevant facts here is important to understand the duty of state regulators to proceed in a reasonable manner. Perhaps the majority chooses to discount the facts because the facts illustrate a breach of the duty of reasonable care.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

to comply with the mandates of the Directed Plan of Protection, Cedarbrook's revenues declined, and Mr. Leonard lost a potential sale of the facility.

¶ 87   Cedarbrook initially challenged DHHS's regulatory actions by filing a contested case in the Office of Administrative Hearings (OAH). OAH entered a stay enjoining DHHS's suspension order. DHHS, however, continued to issue proposed penalties against Cedarbrook exceeding $340,000. Prior to the hearing, the parties settled, and DHHS agreed to withdraw all of the agency actions it had taken against Cedarbrook.

¶ 88   On 25 October 2018, plaintiffs filed an Affidavit and Verified Claim for Damages against DHHS in the Industrial Commission asserting negligence claims based on DHHS's investigative and regulatory actions.[4] The Verified Claim for Damages alleges that:

> [DHHS] breached the duty owed to [Cedarbrook and Mr. Leonard] in (1) conducting the surveys of Cedarbrook; (2) writing and publishing the Statements of Deficiencies; (3) issuing the Directed Plan of Protection against Cedarbrook, and leaving it in place for nearly five months; and (4) issuing the Erroneous Suspension, and leaving it in place for nearly eight months.

Plaintiffs' Verified Claim for Damages specifically details that the manner in which

---

[4] The concurring opinion characterizes plaintiffs' complaint as alleging intentional acts and thus contends that plaintiffs' claims are not cognizable under the STCA. The essence of plaintiffs' allegations, however, is not that the regulators intentionally sought to harm Cedarbrook but that they were negligent in their investigation, which resulted in negligent regulation.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

DHHS conducted the investigations, the methods DHHS used in performing the interviews, and the process the surveyors employed in drafting the statements were unreliable, aggressive, and harmful to the residents. Plaintiffs allege that the DHHS surveyors "double-teamed" residents, asked suggestive questions, and intruded on the residents' privacy. Additionally, plaintiffs allege that the summary nature of drafting the statements was unreliable and resulted in mischaracterizations, conclusory statements, and unsupported allegations. As a result of DHHS's alleged negligent regulatory activity, plaintiffs claim damages in excess of $1,000,000 for lost business income and the loss of a potential sale of the facility.

On 8 January 2019, DHHS filed a response and motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure and a motion to stay discovery. The Deputy Commissioner denied DHHS's motion to dismiss on 13 March 2019. DHHS appealed to the Full Commission, which approved DHHS's request for an interlocutory appeal on 9 May 2019. The Full Commission held a hearing on 10 September 2019 and entered an order affirming the denial of DHHS's motion to dismiss on 6 November 2020. The Full Commission concluded that the STCA "waived sovereign immunity, and [Cedarbrook] complied with the requirements of [invoking] the [STCA] in filing [its] Affidavit." The Full Commission further concluded that the public duty doctrine did not bar plaintiffs' claims and that plaintiffs pled a valid claim for negligence. DHHS appealed to the Court of Appeals.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

On appeal, DHHS argued, in relevant part, that the Industrial Commission erred by denying DHHS's motion to dismiss because the APA, rather than the STCA, provides plaintiffs with an adequate state remedy. *Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 281 N.C. App. 9, 2021-NCCOA-689, ¶ 13. The Court of Appeals, relying on *Nanny's Korner Day Care Center, Inc. v. North Carolina Department of Health and Human Services*, 264 N.C. App. 71, 80, 825 S.E.2d 34, 41, *appeal dismissed, disc. rev. denied*, 372 N.C. 700, 831 S.E.2d 89 (2019), held that a regulated entity does have an adequate state remedy under the STCA. *Cedarbrook,* ¶ 16. The Court of Appeals reasoned that "the availability of an administrative remedy [through the APA] does not preclude plaintiff from seeking a remedy under the STCA" for the negligent actions of a state regulator. *Id.* ¶ 14. The Court of Appeals thus affirmed the Full Commission's order denying DHHS's motion to dismiss. *Id.* ¶ 33.

The dissenting judge disagreed that Cedarbrook could seek a remedy under the STCA. According to the dissenting judge, the "regulatory review function is clearly assigned under the [APA] to the [OAH]"; therefore, "[c]laims challenging an agency's regulatory actions are properly heard under the [APA]." *Id.* ¶¶ 39, 41 (Tyson, J., dissenting). As such, because of the administrative avenue provided through the APA, the "Industrial Commission cannot waive North Carolina's sovereign immunity under the STCA." *Id.* ¶ 40. The dissenting judge thus would have held that the

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

relevant portion of *Nanny's Korner* discussing the availability of a remedy under the STCA is dicta. *Id.* ¶¶ 68–69. DHHS appealed to this Court based on the dissenting opinion.

The controlling question here is whether the STCA provides for a limited waiver of the state's sovereign immunity that allows a regulated entity to challenge a state regulator's negligent actions or whether the entity is limited to an administrative remedy and/or a constitutional claim. This Court reviews the denial of a motion to dismiss on the basis of sovereign immunity de novo. *White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013). Additionally, when reviewing a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, this Court treats the "factual allegations contained in [the] affidavit before the Industrial Commission as true." *Hunt v. N.C. Dep't of Lab.*, 348 N.C. 192, 194, 499 S.E.2d 747, 748 (1998) (citation omitted).

The doctrine of sovereign immunity "is firmly established in the law of North Carolina." *Lewis v. White*, 287 N.C. 625, 642, 216 S.E.2d 134, 145 (1975). This Court has long held that "an action cannot be maintained against [a state agency] unless it consents to be sued or upon its waiver of immunity, and that *this immunity is absolute and unqualified.*" *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983).

The STCA expressly provides a limited waiver of the state's sovereign

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

immunity. It permits claims that arise:

> as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

N.C.G.S. § 143-291(a) (2021). The purpose of the STCA is to "give greater access to the courts to plaintiffs in cases in which they [are] injured by the [s]tate's negligence." *Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 11, 727 S.E.2d 675, 683 (2012). Further, the STCA charges the North Carolina Industrial Commission with "hearing and passing upon [such] tort claims against . . . agencies of the State." N.C.G.S. § 143-291(a). To invoke the jurisdiction of the Industrial Commission under the STCA, the claimant need only file an affidavit in duplicate, containing the following:

> (1) The name of the claimant;
>
> (2) The name of the department, institution or agency of the State against which the claim is asserted, and the name of the State employee upon whose alleged negligence the claim is based;
>
> (3) The amount of damages sought to be recovered;
>
> (4) The time and place where the injury occurred;
>
> (5) A brief statement of the facts and circumstances surrounding the injury and giving rise to the claim.

N.C.G.S. § 143-297 (2021). Moreover, the STCA "incorporate[s] the common law of negligence." *Stone v. N.C. Dep't of Lab.*, 347 N.C. 473, 479, 495 S.E.2d 711, 715 (1998).

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

As such, "negligence is determined by the same rules as those applicable to private parties." *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).

The majority contends the STCA is inapplicable because private persons do not exercise regulatory power; therefore, the plain language of the STCA forecloses plaintiffs' claims. The majority holds that plaintiffs' negligence claim is not cognizable under the STCA and that a state regulator does not owe a duty of care to a regulated entity. Finally, the majority contends that the STCA is not the proper statutory avenue to challenge the state's regulatory actions because the statutes governing adult care homes allow entities to seek reversal of the state's regulatory actions under the APA through the OAH. According to the majority, because the APA provides for a remedy through the OAH, plaintiffs are precluded from seeking a remedy for DHHS's negligent regulatory actions under the STCA.

In holding that a negligence claim by a regulated entity against its state regulator is not cognizable under the STCA, the majority misreads *Nanny's Korner* and disregards its clear holding. In *Nanny's Korner*, DHHS was notified of a substantiated sexual abuse allegation at a daycare. *Nanny's Korner*, 264 N.C. App. at 72, 825 S.E.2d at 36. DHHS issued the daycare a written warning, and the daycare informed its customers of the allegation. *Id.* at 73–75, 825 S.E.2d at 37–38. As a result, the daycare lost business and was forced to close. *Id.* at 74–75, 825 S.E.2d at 38. After initially proceeding through the OAH, the daycare brought a negligence

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

claim against DHHS under the STCA for failing to conduct an independent investigation of the allegation. *Id.* at 73–75, 825 S.E.2d at 37–38. The Industrial Commission, however, dismissed the daycare's negligence claim because the statute of limitations had run. *Id.* at 75, 825 S.E.2d at 38. Notably, in addressing the daycare's constitutional claim against DHHS, the Court of Appeals concluded that the constitutional claim failed because the daycare "had an adequate state remedy in the form of the Industrial Commission through the Torts Claim Act." *Id.* at 80, 825 S.E.2d at 41. Thus, the daycare could have pursued its negligent regulation claim against DHHS under the STCA had the claim been timely filed. *See also Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 340, 678 S.E.2d 351, 355 (2009) (allowing the plaintiff to bring a constitutional claim when the plaintiff's negligence claim did "not provide an adequate remedy at state law [because] governmental immunity [stood] as an absolute bar"); *Helm v. Appalachian State Univ.*, 363 N.C. 366, 677 S.E.2d 454 (2009) (per curiam).

¶ 97        The majority here contends that the court in *Nanny's Korner* "did not fully examine the extent, if any, to which the [STCA] permits the type of claim that the daycare center pursued." However, in order to dispose of the daycare's constitutional claim, the court had to first consider the alternative remedies and address the availability of the daycare's negligence claim against DHHS under the STCA. The court explained that the STCA "explicitly grants authority to the North Carolina

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

Industrial Commission to hear tort claims against State agencies." *Nanny's Korner*, 264 N.C. App. at 80, 825 S.E.2d at 41. Pivotal to the court's dismissal of the constitutional claim was its holding of a viable statutory remedy under the STCA had the negligence claim been timely filed. *See Craig*, 363 N.C. at 339–40, 678 S.E.2d at 355; *Helm*, 363 N.C. 366, 677 S.E.2d 454. The majority here discounts this important step and accordingly disregards that the court clearly expressed that the STCA is an available avenue for a regulated entity's negligence claim.

¶ 98    This Court has similarly recognized that negligence claims against state regulators challenging the state's regulatory activity are within the scope of the STCA. In *Multiple Claimants v. North Carolina Department of Health and Human Services*, for instance, the plaintiffs filed claims under the STCA alleging that DHHS was negligent in performing their duties of inspecting the jails. 361 N.C. 372, 373, 646 S.E.2d 356, 357 (2007). This Court held that DHHS had a duty of care to inspect the jails and ensure the facilities were complying with the regulatory requirements. *Id.* at 378, 646 S.E.2d at 361. As such, this Court allowed the plaintiffs to bring negligence claims challenging DHHS's regulatory actions under the STCA. *Id.* at 379, 646 S.E.2d at 361; *see also Ray*, 366 N.C. at 2–3, 727 S.E.2d at 677–78 (concluding that the plaintiffs' claims for negligent design and execution of narrowing a roadway and negligent failure to repair the road by the Department of Transportation are within the scope of the STCA); *Gammons v. N.C. Dep't of Hum. Res.*, 344 N.C. 51, 54,

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

472 S.E.2d 722, 724 (1996) (holding that the Industrial Commission had jurisdiction to hear a claim for the negligent investigation of child abuse by a state agency).[5]

¶ 99     Accordingly, these cases illustrate instances in which regulatory activities have been held to be included under the STCA. The "the State . . . , *if a private person*" language includes state regulators. N.C.G.S. § 143-291(a) (emphasis added). The majority contends that "[p]rivate persons do not, of course, exercise regulatory power." As shown, this Court has previously recognized, however, instances where the state is liable for performing regulatory functions that private persons do not perform. *See Multiple Claimants*, 361 N.C. at 378, 646 S.E.2d at 360 (DHHS regulating and inspecting jails); *Ray*, 366 N.C. at 3, 727 S.E.2d at 677–78 (Department of Transportation designing and executing the narrowing of a roadway). Thus, the focus is not so much on the status of the government actor. The elements of negligence are the same under the STCA, and "negligence is determined by the same rules as those applicable to private parties." *Bolkhir*, 321 N.C. at 709, 365 S.E.2d at 900. Therefore, all actors are required to act in a non-negligent manner.

---

[5] Many Court of Appeals decisions have similarly held that negligence claims against state agencies are within the scope of the State Tort Claims Act. *See Est. of Tang v. N.C. Dep't of Health & Hum. Servs.*, 2021-NCCOA-611 (unpublished) (negligent enforcement of regulations governing an adult care home by DHHS); *Crump v. N.C. Dep't of Env't & Nat. Res.*, 216 N.C. App. 39, 715 S.E.2d 875 (2011) (negligent inspection of land for a septic tank permit by the Department of Environment and Natural Resources); *Haas v. Caldwell Sys.*, 98 N.C. App. 679, 392 S.E.2d 110 (1990) (negligent inspecting and monitoring of an incinerator); *Zimmer v. N.C. Dep't of Transp.*, 87 N.C. App. 132, 360 S.E.2d 115 (1987) (negligent designation of a detour route by the Department of Transportation).

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

Here DHHS's conduct and the manner in which it performed the inspections expose it to liability, rather than its status as a government actor.

Next, the majority holds that state regulators do not owe a duty of care to regulated entities. The majority emphasizes the "critical" distinction between the duty of care that state regulators owe to individuals, who benefit from the regulations, and entities, which are regulated. The law of negligence, however, makes no such distinction. State regulators owe a duty of care to those subject to the state's regulatory authority and to those whom the state's actions are designed to protect. Thus, state regulators owe a duty of care to regulated entities and to individuals. It is not exclusively one or the other. The Court of Appeals' decision in *Crump v. North Carolina Department of Environment and Natural Resources*, 216 N.C. App. 39, 715 S.E.2d 875 (2011), is illustrative.

In *Crump*, the state negligently issued a septic tank permit, and the landowners recovered damages under the STCA. *Crump*, 216 N.C. App. at 39–40, 715 S.E.2d at 876–77.[6] The state's duty of care in properly inspecting and issuing the permit extended to the landowners, those directly subject to the state's regulatory authority, as well as to the surrounding property owners, those who would be

---

[6] *Crump* also demonstrates a situation in which "the State . . . , if a private person," is liable under the STCA. *See* N.C.G.S. § 143-291(a) (2021). Private persons do not inspect and issue septic tank permits. The Court of Appeals, however, held that the plaintiffs could recover for the state's negligent regulatory actions.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

impacted by an improper septic system. Similarly, here, the state's duty arising from the inspection and regulation of Cedarbrook extends to the facility, the entity subject to the state's regulatory authority, and to the individuals living at the facility, those protected by regulations.

¶ 102        The majority also contends that recognizing that state regulators owe a duty to regulated entities would create conflicting duties of care, which are "inherently problematic."[7] In support, the majority relies on *Koch v. Bell, Lewis & Associates*, 176 N.C. App. 736, 740, 627 S.E.2d 636, 638–39 (2006), which declined to recognize the existence of a duty because of the "conflicting loyalties" an insurance adjuster owes to both the claimant and the insurer. Here, however, the state owes the same duty of care to both Cedarbrook and the residents at the facility. DHHS can ensure Cedarbrook is complying with the governing regulations by conducting a fair investigation while also satisfying their duties to the residents. Thus, unlike in *Koch*, there are no conflicting duties or loyalties that prevent DHHS from extending a duty of care to both the facility and the individuals. The state's duty to ensure that

---

[7] The majority contends that the facts in *Multiple Claimants* illustrate the conflicting duties "conundrum" that regulatory agencies would face if regulatory negligence claims were permitted under the STCA. In applying plaintiffs' position here to the facts of *Multiple Claimants*, the majority assumes that the county in *Multiple Claimants* would challenge the state's findings as "unreasonable" upon the state's "proper inspection of the jail." To the contrary, the challenge is to the evidence-gathering process, or the manner in which the investigation is conducted, as well as the state's ultimate findings and identified violations. Thus, plaintiffs' claim here may be more appropriately characterized as a negligent regulation claim arising from a negligent investigation.

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

regulated entities are complying with the governing regulations does not conflict with the state's duty to perform the investigations in a non-negligent manner or treat the residents properly.

¶ 103  The majority concedes that "it is theoretically possible to find a middle ground between too much regulation and no regulation at all." In other words, there can be state action that complies with the state's duty to all parties involved. A non-negligent action ensures compliance with the duty to enforce regulations which protect those designed to be protected and is fair to the regulated entity. The majority contends that the General Assembly, rather than the judicial branch, should be responsible for identifying the "middle ground." Maintaining a "middle ground" by requiring state regulators to conduct investigations and exercise their regulatory authority in a non-negligent manner, however, creates a level playing field. It ensures that state regulators treat all entities equally in the performance of their regulatory activity, while properly protecting those whom the statutes were designed to protect.

¶ 104  Because the General Assembly has granted the state significant regulatory authority over entities, state regulators, who can diminish or destroy a regulated business, should be required to conduct investigations and exercise their authority in a non-negligent manner. Proving negligence in the regulation of a business may be difficult given the discretion granted to the state agency. Nonetheless, in the extraordinary circumstance where the regulator is not justified in proceeding in the

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

manner adopted, the injury caused by the regulator's negligence should be compensable. Thus, when a state agency is granted significant regulatory authority, the regulator should be held to exercise that power, over both the regulated entity and the individuals that the state's actions are intended to protect, in a non-negligent manner.

¶ 105        Here DHHS owes a duty of care to Cedarbrook, as well as the individuals living at the adult care home. Viewing the factual allegations in the affidavit as true and in the light most favorable to plaintiffs, Cedarbrook incurred substantial costs, experienced a significant decrease in revenue, and was required to revise many of its operating procedures as a result of DHHS's alleged negligent regulatory actions.[8] Accordingly, as provided in *Nanny's Korner* and as illustrated by our case law, the STCA's limited waiver of the state's sovereign immunity provides entities, such as Cedarbrook, with a statutory avenue under the STCA to bring a negligence claim against DHHS and seek compensable damages through the Industrial Commission. Because plaintiffs properly invoked the Industrial Commission's jurisdiction through their affidavit, plaintiffs should be able to pursue their negligence claims under the STCA.

¶ 106        Further, the availability of an administrative remedy through the OAH does

---

[8] Moreover, Cedarbrook's residents suffered significant harm due to DHHS's intrusive investigation and interview methods.

CEDARBROOK RESIDENTIAL CTR., INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

not preclude claimants from seeking an adequate remedy under the STCA through the Industrial Commission. The statutory provisions governing adult care homes allow the facilities to challenge penalties and suspensions through an administrative hearing. *See* N.C.G.S. § 131D-2.7(d)(4) (2021) (contesting a suspension of admissions though an administrative hearing as provided by the APA); N.C.G.S. § 131D-34(e) (2021) (contesting a penalty through an administrative hearing as provided by the APA). The provisions, however, do not indicate that proceeding under the APA through the OAH is an exclusive remedy. If the General Assembly intended to provide a mutually exclusive remedy, rather than a dual remedy, the legislature could have clarified this statutory intersection. Instead, the legislature has remained silent, and the courts have consistently interpreted the STCA to include challenges to the state's negligent regulatory activity.

¶ 107      Our state constitution, unlike the federal constitution, expressly provides that individuals are entitled to the fruits of their own labor as an inalienable right. N.C. Const. art. I, § 1. As a result of the majority's decision, a regulated entity will be forced to bring a constitutional tort claim when a state agency infringes upon its ability to operate and conduct business. Despite conceding that there may be instances when there is "too much regulation[,]" the majority's decision removes the appropriate statutory avenue for entities to seek recovery for negligence by state regulators under the STCA. Consequently, the majority's decision thwarts the very purpose of the

CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

2022-NCSC-120

*Newby, C.J., dissenting*

STCA, which was enacted to provide "greater access to the courts to plaintiffs . . . [who have been] injured by the [s]tate's negligence." *Ray*, 366 N.C. at 11, 727 S.E.2d at 683. As such, the majority's decision also broadens the state's regulatory authority. Now, state regulators, who possess significant regulatory power over businesses, may conduct investigations of regulated entities with limited accountability. The STCA provided such accountability.

¶ 108    In summary, the majority's decision removes the STCA as a potential avenue for regulated entities contesting the state's negligent actions and forces entities to pursue an administrative remedy and/or a constitutional challenge. Because of the broad regulatory authority granted to state agencies, regulators should be required to exercise that authority, over both the regulated entity and the individuals protected by the regulations, in a non-negligent manner. The Court of Appeals thus properly affirmed the Full Commission's order denying DHHS's motion to dismiss. Accordingly, I respectfully dissent.

Justice BERGER joins in this dissenting opinion.